## 58596. CLOVER REALTY COMPANY v. GOUYD.

QUILLIAN, Presiding Judge.

Plaintiff - Clover Realty Company, appeals from the grant of defendant Gouyd's motion for summary judgment, the grant of defendant's motion to dismiss Count 1 of plaintiff's complaint, and the denial of plaintiff's motion for summary judgment.

Defendant Gouyd executed a real estate listing contract with Clover to sell his commercial property in Doraville. The agreement, in essence, provided for a gross sales price of $222,500 with a sales commission to Clover of $11,125, with terms to the purchaser of "$42,500 cash at closing, and to take back a Purchase Money Note, secured by the property, for the balance of the Sales Price" and a "'wraparound mortgage'" at 8 3/4% for a term "of up to 25 years."

Clover stated that they presented two contracts to Gouyd which they contend complied with the listing contract and Gouyd refused to accept either. They brought this action to recover their sales commission. Count 1 was based on a proffered contract dated May 3, 1978 and was dismissed on motion by the defendant. Count 2 was based on a May 16, 1978 contract and defendant's motion for summary judgment was granted and plaintiff's motion for summary judgment was denied. Plaintiff appeals. *Held:*

1. The contract dated May 3, 1978 listed a purchase price of $218,375 rather than $222,500 contained in the listing contract, but Clover agreed to accept a $7,000 commission which would net Gouyd $211,375 — the same amount as the original contract price. However, the proposed contract contained terms which differed from the listing contract. One of those conditions was that the "Purchase Money Note shall contain the right to prepay without penalty in whole or in part." Gouyd testified that prepayment of the purchase note would subject him "to a heavy tax liability." The tendered contract also stated that "[t]he subject property shall stand as the sole security for the Purchase Money Note." Gouyd stated that the listing contract required, and he wanted the buyer's personal obligation on the note in addition to the property being security. The contract also contained 19 additional

conditions about providing a termite inspection letter, and that all electrical, heating, plumbing, cooling systems and appliances would be delivered in "normal operating condition" and the seller would have the option of remedying any defects or returning the "earnest money to purchaser." Gouyd testified that he was selling the property "as is."

It is clear that the contract dated May 3, 1978 did not comply with the terms of the listing contract between Clover and Gouyd. "The broker's commissions are earned when, during the agency, he finds a purchaser ready, able, and willing to buy, and who actually offers to buy on the terms stipulated by the owner." Code Ann. § 4-213 (Code § 4-213). "[P]roof of an offer by the proposed purchaser to buy on terms not stipulated by the owner will not entitle the plaintiff broker to his commissions. [Cits.] 'Even a slight variation will prevent the agent from recovering.' [Cits.]" *Turner v. Atlanta Realty Co.,* 112 Ga. App. 648, 649 (145 SE2d 758); *Donohue v. Monroe,* 147 Ga. App. 835, 836 (250 SE2d 571); *Weldon v. Lashley,* 214 Ga. 99, 102 (103 SE2d 385); Annot. 18 ALR2d 376.

The offer to purchase contained stipulations which varied materially from the conditions of the listing agreement and the court did not err in dismissing Count 1 of plaintiff's action. *Fourteen West Realty v. Lane,* 147 Ga. App. 171, 172 (248 SE2d 233).

2. An officer of Clover Realty stated in an affidavit that he presented the May 3, 1978 contract to Gouyd who declined to accept the offer and would not make any counteroffer. He said he "went back to the proposed purchasers and obtained from them a new offer of purchase on or about May 16, 1978 for the identical gross sales price and identical net sales price to [Gouyd] as that set out in the listing Contract." He then contacted Gouyd and told him of the new offer "to purchase the property at the total asking price, gross and net" but defendant refused to make an appointment with him to submit the offer. The officer stated that he went to defendant's home and told him of the offer "to purchase the building at the gross sales price," but Gouyd "refused to even look at the proposed offer. . ."

Gouyd testified that only one contract was ever

submitted to him — the one dated May 3, 1978. He "was never presented a contract dated May 16, 1978 by anyone. Douglas R. Stanfield, representative of Plaintiff, came to my home but he did not show me any contract dated May 16, 1978, but simply was trying to get me to accept the previous contract offered to me."

Clover forwarded a letter, dated May 10, 1978, to Gouyd demanding a commission "of $11,125" based on the refusal of Gouyd to accept the tendered contract of May 3, 1978 — even though the contract tendered stated the commission would be "$7,000.00," and the terms of the tendered contract were substantially different from those of the listing contract. On June 19, 1978, a lawyer representing Clover wrote to Gouyd demanding "$11,125" for refusing to accept "a written offer to purchase your property substantially complying with the terms of the listing agreement . . . on May 5, 1978 . . . I also understand that *the offer was again conveyed to you* by letter on May 10, 1978." (Emphasis supplied.) No mention was made of any May 16, 1978 contract — even though the letter was sent on June 19, 1978.

There would appear to be a conflict in the evidence as to whether a May 16, 1978 contract was ever tendered to Gouyd, and such conflict would require denial of any motion for summary judgment. However, this conflict is not material to the issue reached as we find that the contract dated May 16, 1978 contained many of the same defects of the May 3, 1978 contract which did not comply with the original listing contract. The contract of May 16 included the purchaser's right to prepay the purchase money note — without penalty. It also included the same additional 19 conditions — some minor, some substantial. Clover drafted all three instruments. If they desired the listing contract to be subject to minor conditions in a subsequent offer, they could easily have provided for it in the listing contract. They did not. The contracts alleged to have been tendered varied substantially from the conditions contained in the listing contract and amounted to a counter-offer, not an acceptance. Such variations prevent a realty agent from earning his sales commission. *Turner v. Atlanta Realty Co.,* 112 Ga. App. 648, 649, supra; *Donohue v. Monroe,* 147 Ga. App. 835, 836, supra; *Weldon*

*v. Lashley,* 214 Ga. 99, 102, supra.

The trial court did not err in granting summary judgment for defendant as to Count 2 and in denying plaintiff's motion for summary judgment.

*Judgment affirmed. Smith and Birdsong, JJ., concur.*

SUBMITTED OCTOBER 17, 1979 — DECIDED JANUARY 11, 1980.

*Joe H. Bynum, Jr.,* for appellant.
*Platon P. Constantinides,* for appellee.