66834, 66835. STEINEMANN v. VAUGHN & COMPANY, LTD. et al.; and vice versa.

DEEN, Presiding Judge.

Steinemann commenced this action against Vaughn & Company, Ltd., a limited partnership, engaged in real estate developments, and the individual partners (W. D. Danielson, T. H. Paine, Charles Vaughn, and Steve Vaughn), seeking to recover commissions for real estate brokerage services he rendered for the partnership. Two jury trials followed, after which all parties appeal.

In 1975 Vaughn & Company attempted to develop a 200-acre office park near the intersections of I-75 and I-285 known as Circle 75. By March 1975 Steinemann, as a licensed real estate broker, offered his services in: (1) obtaining tenants for an office building already completed at Circle 75; (2) obtaining an acceptable joint venturer to develop a specialty shopping center on the property; and (3) obtaining acceptable financing for the shopping center project. The partners assented, and it was arranged for Steinemann to use an office rent-free in the completed building.

Steinemann contacted several institutions and companies, promoting the investment opportunity presented by the Circle 75 project, but his efforts were concentrated on selling the idea to Paul Broadhead & Associates, Inc. (Broadhead), a national shopping center developer which was based in Mississippi. After Steinemann had shown the premises to and discussed the shopping center plans with Broadhead, as well as arranged meetings between the various

partners and Buddy Herring, Broadhead's president, Broadhead expressed interest in entering a joint venture with the partnership for the purpose of developing the specialty shopping center. On September 5, 1975, Herring submitted a proposed shopping center development and management agreement and a partnership agreement for the partners' perusal. Under these proposed agreements and discussions between the parties, Broadhead was to provide the financing and construct the shopping center, while Vaughn & Company was to provide the land.

On or about October 8, 1975, Herring forwarded a copy of a 6.6 million dollar loan commitment from the Lincoln Savings Bank, which required acceptance no later than October 15, 1975. (This loan commitment was unsigned by any bank official, but, as indicated on the loan commitment itself and as explained by Herring at trial, the bank would provide a signed commitment upon its receipt of a mandatory, nonrefundable security deposit of $66,000.) On October 14, 1975, Steve Vaughn replied by returning a copy of the joint venture agreement signed by all the partners and indicating that the loan arrangement was acceptable to the partnership.

The loan commitment essentially required that a first mortgage on the subject premises be given the bank, making it necessary for the partnership to obtain a release of a prior security interest on the property already held by B. F. Saul Real Estate Investment Trust (Saul). Because the partnership never obtained the release of the prior security interest, however, Broadhead declined either to sign the joint venture agreement or to pay the $66,000 nonrefundable fee to the bank for the loan commitment. At trial, Herring testified that Broadhead had stood ready, willing, and able to enter the joint venture had Vaughn & Company obtained the release of the prior security interest. Eventually, not only did the partnership fail to obtain the release from Saul but it lost the property as a result of its default on the three loans owing to Saul.

Whether Steinemann and the partnership entered into an express contract for commissions for brokerage services in obtaining a joint venturer and financing for the specialty shopping center was in dispute. Steinemann testified that he had submitted to Steve Vaughn a written brokerage contract which provided for commissions of $224,000 for locating a joint venturer and $66,000 for obtaining the necessary financing, and that on a number of occasions Vaughn had indicated that there was no problem with the arrangement (although Vaughn never signed it). (Expert testimony at trial showed that the figures were consistent with the customary method of computing real estate brokerage fees, i.e., taking one percent of the amount of financing obtained and a range of five to ten

percent of the difference between the amount of financing and the estimated value of the completed project.) Steve Vaughn admitted that when Steinemann approached him about procuring a joint venturer and financing for the project, he had agreed that Steinemann would be compensated accordingly. However, all of the partners denied that Steinemann had submitted a written contract. All of the partners further testified, contrary to Steinemann's claim, that any understanding between them regarding such commissions was contingent upon the actual closing of the joint venture. Also contrary to the testimony of Steinemann and Herring, the partners claimed that Broadhead, and not Vaughn & Company, had the responsibility of obtaining the release of the prior security interest on the property.

In his complaint, Steinemann asserted the alternative theories of recovery of contract and quantum meruit. In the first trial, the trial court instructed the jury that should it award Steinemann recovery under the contract theory, the jury could also award prejudgment interest but that it would have to specify the date beginning from which the interest would be calculated. The jury subsequently returned a general verdict for Steinemann, awarding him $300,000 plus seven percent interest beginning on October 9, 1975. The trial court then informed counsel for Steinemann that an election of remedies would be required prior to entry of judgment on the verdict. Steinemann's counsel disagreed that such an election was necessary in this case and requested permission to submit a brief on that issue, but that if such was required he elected for recovery under the contract theory. Subsequently, counsel never submitted any brief or further argument on this point, apparently informed counsel for Vaughn & Company that he had decided not to do so, and instead submitted to the trial court a judgment order that included the $300,000 recovery and the award of prejudgment interest dating back to October 9, 1975. The trial court eventually signed the order and entered the judgment on October 30, 1981.

Vaughn & Company then filed a motion for new trial on November 6, 1981, and a motion for judgment notwithstanding the verdict on November 30, 1981. Before a hearing on these motions could be held, however, the trial judge died. After reviewing the evidence, a second judge granted judgment for Vaughn & Company notwithstanding the verdict on any contract theory of recovery; he concluded, however, that Steinemann had proven his case under a quantum meruit theory, and ordered a new trial on the sole issue of damages. At the close of Steinemann's evidence at the second trial, the trial court directed a verdict for Steinemann for only nominal damages of $1.00.

In Case No. 66834, Steinemann appeals from the grant of the judgment notwithstanding the verdict and new trial, as well as the direction of the verdict at the second trial. In Case No. 66835, Vaughn & Company appeals from the denial of its motion for judgment notwithstanding the verdict as to the quantum meruit claim as well, and from the trial court's excluding liability as an issue in the second trial. *Held:*

1. In its order of May 19, 1982, the trial court granted the defendant's motion for judgment notwithstanding the verdict on any contract theory of recovery "on the grounds that the alleged brokerage agreement violated the statute of frauds, not being in writing, because it respected real estate although there was full performance on Plaintiff's part, the terms of any oral brokerage commission were too vague and indefinite for enforceability, and the condition precedent of a ready, willing and able joint venturer and lender was frustrated by the Defendants' actions in failing to obtain release of the subject land . . ." Steinemann contends that all of the grounds stated by the trial court were erroneous, and we agree.

Certainly the trial court erred to the extent that it required the alleged contract between Steinemann and Vaughn & Company to be in writing. Absent a power on the part of the broker to execute a conveyance of any realty, a brokerage contract is one for services and does not come within the statute of frauds. *Cantrell v. Johnston,* 74 Ga. App. 74 (38 SE2d 893) (1946). An oral contract for brokerage commissions is enforceable, *Thomas v. Memory,* 154 Ga. App. 756 (270 SE2d 24) (1980); *Hunter v. Benamy,* 101 Ga. App. 907 (115 SE2d 424) (1960).

The terms of the contract as alleged by Steinemann consisted of his obligation to procure a joint venturer and financing for the shopping center project which were acceptable to Vaughn & Company, for which he was to receive a total commission of $300,000. The record is silent as to any negotiations or understanding about any qualifications or experience to be required by Vaughn & Company of the joint venturer, or of any specific terms of the financing. This lack of definition of what constituted an "acceptable" joint venturer and financing, without more, would demand the conclusion that the terms of the alleged contract were too vague and indefinite to be enforceable. Nevertheless, the test of whether a contract contains the requisite certainty and definiteness is to be made at the time enforcement of the contract is sought. *Griffith v. Fed. Deposit Ins. Corp.,* 242 Ga. 367 (249 SE2d 54) (1978). Moreover, " '[t]he law leans against the destruction of contracts on the ground of uncertainty' . . . 'A contract which is originally and inherently too

indefinite may later acquire precision and become enforceable by virtue of the subsequent acts, words, or conduct of the parties . . . Thus, the objection of indefiniteness may be obviated by performance and acceptance of performance.' " *Pine Valley Apts. v. First State Bank,* 143 Ga. App. 242, 245 (237 SE2d 716) (1977); see also *M. W. Buttrill v. Air Conditioning Contractors,* 158 Ga. App. 122 (279 SE2d 296) (1981).

In this case, Steinemann sought to enforce the alleged brokerage contract as of the date that the partners of Vaughn & Company signed the joint venture agreement proposed by Broadhead and, in a letter dated October 14, 1975, indicated their acceptance of the permanent loan financing arrangement available through the Lincoln Savings Bank. Steinemann had brought forward Broadhead as a joint venturer and had instigated Broadhead's negotiation of the loan commitment. The fact that the partners found acceptable Broadhead and the financing arrangement (the specific terms of which were delineated in the bank's loan commitment letter of October 1, 1975) is apparent from the partners' signing of the joint venture agreement proposed by Broadhead. Accordingly, we conclude that Steinemann's procuring and Vaughn & Company's acceptance of Broadhead as a joint venturer and the financing arrangement with the Lincoln Savings Bank eliminated any contract infirmity of indefiniteness and vagueness. *Pine Valley Apts. v. First State Bank,* supra.

Our review of the evidence thus discloses not so much a problem of vagueness and indefiniteness, but rather a case involving several factual issues: whether Steinemann and Vaughn & Company entered a contract, verbal or written; whether Steinemann actually submitted a written brokerage agreement indicating calculated commissions of $300,000; assuming that Steinemann and Vaughn & Company did enter an agreement, whether the contract required actual closing of the joint venture before commissions would be earned; generally, whether Steinemann procured a joint venturer ready, willing, and able to enter the joint venture on all the terms stipulated by Vaughn & Company; and, whether the partnership, and not Broadhead as the joint venturer, was responsible for obtaining the release of the prior security interest on the property in question. The evidence adduced on each issue was conflicting, and resolution of the conflicts was particularly appropriate for the jury.

OCGA § 10-6-32 (Code Ann. § 4-213) provides that a "broker's commissions are earned when, during the agency, he finds a purchaser who is ready, able, and willing to buy and who actually offers to buy on the terms stipulated by the owner." The fact that the joint venture was never actually consummated would not bar

recovery of commissions unless Steinemann and Vaughn & Company agreed that payment of commissions was contingent upon such. *Alcovy Realty Co. v. Stone Mtn. Abstract Co.,* 137 Ga. App. 597 (224 SE2d 519) (1976); *Knowles v. Haas & Dodd,* 70 Ga. App. 715 (29 SE2d 312) (1944). Even had the parties agreed upon such a contingency, upon the jury's finding that Steinemann procured a ready, able, and willing joint venturer but that the failure to consummate the sale was the fault of Vaughn & Company, commissions would still be due. *Hope v. DeForest Realty,* 144 Ga. App. 269 (241 SE2d 49) (1977); *Deal v. Mtn. Lake Realty,* 132 Ga. App. 118 (207 SE2d 560) (1974); *Alcovy Realty Co. v. Stone Mtn. Abstract Co.,* supra.

It was undisputed that Broadhead was ready, able, and willing to enter the joint venture on terms acceptable to Vaughn & Company, upon the latter's obtaining the release of the prior security interest on the project property. There remained, however, the question of whether the terms of the joint venture agreement stipulated by Vaughn & Company also placed responsibility on Broadhead for obtaining the release. Obviously, if Broadhead was responsible for obtaining the release as maintained by the partners, Steinemann failed to procure a joint venturer ready, able, and willing to accept *all* of the terms to the joint venture stipulated by Vaughn & Company, and thus would not have been entitled to any commissions. Even a slight variation from Vaughn & Company's terms would prevent Steinemann's recovery. See *Clover Realty Co. v. Gouyd,* 153 Ga. App. 64 (264 SE2d 547) (1980); *Schaffer v. Padgett,* 107 Ga. App. 861 (131 SE2d 796) (1963). To the extent that some ambiguity in the written, proposed joint venture agreement existed, in that it specified that Broadhead would contribute all financing for the shopping center project (which financing, argued the partners, extended to paying off the prior mortgage), and primarily because the matter essentially was one of credibility, jury resolution was proper. (We find no merit to the defendant partners' contention that Broadhead did not agree to another term stipulated by the partners, that of accepting the financing arrangement offered by Lincoln Savings Bank, since it was Broadhead that had negotiated the commitment with the bank and had submitted the letter of commitment to the partners for their approval.)

The trial court in the first trial correctly decided that sufficient evidence had been adduced to create genuine issues of fact, regarding the existence and terms of any brokerage contract, any breach thereof, and the terms of the proposed joint venture agreement. The first trial court properly denied the defendants' motion for directed verdict, and the second trial court erred in granting even the partial judgment notwithstanding the verdict and new trial.

The first trial court instructed the jury that it could award prejudgment interest if it found that Steinemann should recover under the alleged contract and if it specified the date beginning from which the interest was to be calculated. By virtue of the jury's having awarded Steinemann the full $300,000 asserted to be due under the contract, and prejudgment interest dating back to October 9, 1975, it is rather obvious that the jury, despite utilization of the general verdict form, found for Steinemann under the contract theory. Nevertheless, Steinemann sought relief under either contract or quantum meruit, two inconsistent remedies; moreover, while prejudgment interest is available for a contract recovery, it is not for any recovery under quantum meruit. *Noble v. Hunt,* 95 Ga. App. 804 (99 SE2d 345) (1957). Accordingly, it appears that Steinemann was required in this case to make an election prior to entry of judgment as to which theory of recovery his award was to be based upon. See *UIV Corp. v. Oswald,* 139 Ga. App. 697 (229 SE2d 512) (1976); *Leslie, Inc. v. Solomon,* 141 Ga. App. 673 (234 SE2d 104) (1977). Despite the current assertions of counsel for Steinemann to the contrary, that election requirement was satisfied when Steinemann's counsel submitted a judgment order, subsequently signed by the trial court and entered as judgment of the court, that included both the full $300,000 recovery and the prejudgment interest calculated from October 9, 1975. Because the second trial court erred in granting the judgment notwithstanding the verdict, and because the jury's verdict was legal and authorized by the evidence, the judgment on that verdict entered by the first trial court must be reinstated.

2. In the cross appeal, Vaughn & Company and the individual partners contend that the second trial court erred in not granting a complete judgment notwithstanding the verdict, and in excluding the issue of liability when it granted the new trial on damages under the quantum meruit theory; other enumerations of error concern the second trial. The holding in Division 1 disposes of the enumerations concerning the ruling on the motions for judgment notwithstanding the verdict and for new trial. Similarly, because the grant of the second trial was error, we need not address the enumerations associated with that second trial.

*Judgment reversed in Appeal No. 66834; Cross Appeal No. 66835 dismissed. Banke and Carley, JJ., concur.*

DECIDED NOVEMBER 3, 1983 —
REHEARING DENIED JANUARY 31, 1984 —

*Warren W. Wills, Jr., Robert U. Wright,* for appellant.
*Franklin R. Nix, Rufus T. Dorsey IV, G. Conley Ingram,* for appellees.