**COLDWELL BANKER COMMERCIAL GROUP, INC., a Delaware Corporation**

v.

**Marvin P. NODVIN.**

No. C83–1212A.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 5, 1984.

James D. Meadows & Jerry B. Blackstock, Powell & Goldstein, Atlanta, Ga., for plaintiff.

Jerome J. Froelich, Jr., Robert B. Remar, Remar, Arnold & Zimring, Atlanta, Ga., for defendant.

## ORDER OF COURT

MOYE, Chief Judge.

The above-styled action was submitted to the jury on special interrogatories under Fed.R.Civ.P. 49(a). This action is now before the Court on the entry of a final judgment. After a review of the special interrogatories, the parties' briefs, and the relevant case law, this Court concludes that the plaintiff is entitled to a judgment in the amount of $40,000.00.

## I. FACTUAL BACKGROUND

In October 1982, Ray Uttenhove, an agent for the plaintiff real estate brokerage firm Coldwell Banker Commercial Group, Inc. (plaintiff), asked the defendant Marvin P. Nodvin (defendant), if he was interested in selling 25 acres of real estate he owned near Interstate Highway 85. At this time, the plaintiff was acting as an agent for Silver Dollar City, Inc. (SDC), which was interested in buying this property. On December 23, 1982, the defendant entered into a contract with Harry Hargrave, a director for SDC, for the sale of the property for $790,000.00. The plaintiff was made a party to this contract so that it could enforce its right to a commission. This contract contained the following provision:

> In negotiating this agreement, Broker has rendered a valuable service for which reason Broker is made a party to this agreement .... Seller agrees to pay Broker the full commission at closing. Commission to be paid in this transaction shall be Forty Thousand and No/100 ($40,000.00) Dollars, which seller agrees to pay to Broker in accordance with the provisions hereof, only if this contract is closed.[1]

On April 21, 1983, the defendant appeared at the scheduled closing but refused to complete the transaction. He claims that the plaintiff did not tender the proper documents and that the plaintiff defrauded him in various ways. On May 13, 1983, the defendant sold his property to SDC, the same purchaser, for $950,000.00.

The plaintiff has filed this lawsuit in two counts: breach of contract and *quantum meruit.* The defendant argues that he has no obligation to pay the plaintiff its commission under the contract because the contract never closed and that the plaintiff is not entitled to recover under *quantum meruit* for various legal reasons. The defendant has also counterclaimed against the plaintiff for fraud and misrepresentation. Before reaching these issues, the Court will review the jury's answers to the special interrogatories.[2]

## II. THE INTERROGATORIES

The jury found that the original $790,000.00 contract closed when the defendant sold his property to SDC on May 13, 1983, for $950,000.00. Interr. No. I(1). The jury also found, however, that the plaintiff failed to tender to the defendant all the documents specified in the $790,000.00 contract on the scheduled closing date. Interr. No. II(1). In addition, the jury found that the plaintiff was not damaged by the defendant's closing of the contract on May 13, 1983. Interr. No. I(9).

The jury concluded that the plaintiff was the procuring cause of the sale of the property, Interr. No. I(2),[3] and that the plaintiff rendered valuable services to the defendant. Interr. No. I(3). The jury found that the reasonable value of those services was $40,000. Interr. No. II(19). The jury also found that the plaintiff was not acting as the agent for the defendant, Interr. No. III(1), but as the agent for the purchaser,

---

1. This clause was substituted by the parties for a clause in the original preprinted form contract which specifically gave the plaintiff its commission if the contract did not close due to the seller's actions.

2. The Court will only mention those answers that are relevant to the judgment.

3. The jury also found that, during the agency, the plaintiff did not find a ready, willing, and able purchaser who offered to buy on the terms stipulated by the defendant. Interr. No. II(14).

SDC. Interr. No. II(7). The fact that the plaintiff was acting as an agent for the buyer was, according to the jury, disclosed to the defendant. Interr. No. II(15).

The jury also found that the defendant caused the plaintiff unnecessary trouble and expense in collecting its commission, Interr. No. I(6), and that the defendant was stubbornly litigious. Interr. No. I(4). The jury reached seemingly contradictory answers on the issue of the defendant's alleged bad faith. In Interr. No. I(5), the jury found that the defendant acted in bad faith in refusing to pay its commission, and in Interr. No. I(7), the jury found that the defendant acted in bad faith by "conspiring to deprive or defraud [the plaintiff] out of its brokerage commission." In Interr. No. I(8), however, the jury concluded that the defendant did not "act in bad faith by *attempting* to deprive or defraud [the plaintiff] out of its brokerage fees." The jury found that the reasonable value of the plaintiff's expenses of litigation was $42,000.00. The jury also found that the plaintiff was not entitled to exemplary damages. Interr. No. I(11).

The jury answered all of the questions relating to the defendant's counterclaim adversely to the defendant. It is clear, therefore, that the defendant is not entitled to any damages on its counterclaim.

In sum, the jury found that the plaintiff rendered valuable services to the defendant in the sum of $40,000.00 and that the plaintiff was the procuring cause of the sale of the defendant's land to SDC. In addition, the jury found that the plaintiff was entitled to its litigation expenses in the amount of $42,000.00. The issues before this Court are whether these findings are supported by the evidence and are appropriate under applicable Georgia law.

4. The plaintiff argues that it is entitled to recover its commission under a "procuring cause" theory. This Court is not convinced that there is such a theory under Georgia law independent of *quantum meruit* or O.C.G.A. § 10–6–32.

5. The analytical framework of this order is not indicative of which side has the burden of proof on any particular issue. Because the jury clearly found for the plaintiff, however, it is useful to

## III. DISCUSSION

█ As a preliminary matter, under Georgia law the plaintiff is required to make an election between inconsistent remedies prior to the entering of the judgment. *UIV Corporation v. Oswald*, 139 Ga.App. 697, 229 S.E.2d 512 (1976). Because there cannot be recovery under both an express contract and *quantum meruit, e.g., Classic Restorations v. Bean*, 155 Ga.App. 694, 699, 272 S.E.2d 557 (1980), the plaintiff is required to make an election of remedies prior to the entering of the judgment.[4] *Steinemann v. Vaughn & Co.*, 169 Ga. App. 573, 313 S.E.2d 701 (1984). In its brief, the plaintiff has stated that if it is required to elect remedies, it would elect to recover under Count II of its complaint which sounds in *quantum meruit.*

The defendant has developed three arguments to support its position that the plaintiff is not entitled to any recovery in this case.[5] First, the defendant claims that the plaintiff is not entitled to recovery under the doctrine of *quantum meruit* because there was an express contract between the parties.

Secondly, the defendant argues that a prerequisite to recovery in this case is the existence of an agency between the parties and the jury explicitly found that no such agency relationship existed. Finally, the defendant contends that the plaintiff cannot recover because it was actually acting as an agent for the purchaser not for the defendant.[6] This Court will analyze each of these arguments separately.

### A. *Recovery Under Quantum Meruit When There Is An Express Contract*

It is undisputed that the parties entered into an express contract that detailed the

analyze their answers in relation to the defendant's legal arguments.

6. The defendant also makes various arguments in support of its position that the plaintiff is not entitled to attorney's fees in this case. Those arguments will be discussed in section 3 of this order.

parties' obligations before a commission would have to be paid. The defendant claims that there can be no recovery in *quantum meruit* when the parties have entered into an express contract. Although there are Georgia cases which support this proposition, *e.g., Bean, supra,* there are also numerous Georgia cases which have allowed plaintiffs to assert both breach of contract and *quantum meruit* in the same lawsuit. *E.g., Steinemann, supra; Starling, Inc., et al. v. Housing Authority of Atlanta,* 170 Ga.App. 858, 318 S.E.2d 728 (1984); *Stowers v. Hall,* 159 Ga.App. 501, 283 S.E.2d 714 (1981); *Sharp-Boylston Company, et al. v. Lundeen,* 145 Ga.App. 672, 244 S.E.2d 622 (1978). The *Lundeen* case is extremely similar to the present action. In *Lundeen,* the plaintiff broker sued the defendant buyer for a real estate commission under both an express oral contract and the doctrine of *quantum meruit.* The Court stated the following:

> After reviewing the evidence, it appears to this Court that the only clear provision in the oral agency contract between the [buyer] and the [broker], was that [the buyer] would compensate [the broker], if through his efforts, [the buyer] leased or purchased a building. Under these circumstances, we are unable to find any error in the trial court's direction of a verdict for the [buyer] on Count 1, breach of an oral contract.
>
> It was, however, error to direct a verdict in [the buyer's] favor on Count 2, recovery in *quantum meruit* .... Even though the [buyer's] ultimate purchase ... of the property was not due to the [broker's] efforts, the evidence shows that it was [the broker] who procured the initial information on the building, .... Under these circumstances, the jury should have been allowed to decide whether [the broker] was entitled to any recovery in *quantum meruit.*

*Lundeen* at 673–74, 244 S.E.2d 622.

Thus, the *Lundeen* court specifically held that the plaintiff real estate broker could sue the buyer under an express oral contract and under the theory of *quantum meruit.*

After an exhaustive review of the Georgia cases on this subject, this Court concludes that it is permissible to assert the inconsistent theories of breach of contract and *quantum meruit* in the same action as long as an election is made prior to the entering of the judgment. *See Steinemann, supra,* 169 Ga.App. at 579, 313 S.E.2d 701. The plaintiff has elected to recover under *quantum meruit.* Accordingly, the defendant's argument that the plaintiff is barred from any such recovery because of the existence of an express contract is without merit.

**B.** *The Absence of An Agency Relationship*

The defendant argues that the plaintiff cannot recover under the theory of *quantum meruit* because the jury found that it was not acting as the agent for the defendant. There are two Georgia statutes which arguably support the plaintiff's recovery under *quantum meruit.* O.C.G.A. § 10–6–32 provides the following:

> The fact that property is placed in the hands of a broker to sell shall not prevent the owner from selling, unless otherwise agreed. The broker's commissions are earned when, during the agency, he finds a purchaser who is ready, able, and willing to buy and who actually offers to buy on the terms stipulated by the owner.

In Interr. No. II(14), however, the jury found that the plaintiff *did not* "as Marvin Nodvin's agent, find a purchaser ready, able and willing to buy who actually offered to buy on the terms stipulated by Mr. Nodvin." Therefore, the jury found that the plaintiff was not entitled to its commission under O.C.G.A. § 10–6–32. The other statutory section upon which the plaintiff relies is O.C.G.A. § 9–2–7 which states the following:

> Ordinarily, when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof. However, this presumption

does not usually arise in cases between very near relatives.

The issue before this Court is whether this section requires [7] in the context of a broker suing for services performed, the existence of an agency relationship.[8]

█ The defendant makes the bold allegation that "[i]n every case where a broker has recovered on a theory of *quantum meruit*, it was, in fact, acting as agent for the defendant." Defendant's Reply Brief at 6. The defendant has failed, however, to produce a Georgia case which has explicitly held that an agency relationship is a prerequisite to recovery under *quantum meruit*. Furthermore, unlike O.C.G.A. § 10–6–32, there is no language in O.C.G.A. § 9–2–7 which indicates that an agency relationship is a prerequisite for recovery. Rather, all that is required is the rendering of a valuable service to another and the acceptance by that person of that service. The standard which Georgia courts have seemed to adopt is that there can be no recovery for services "rendered voluntarily and with no expectation ... that they will be compensated." *E.g., Brightwell v. Oglethorpe Tel. Co.*, 47 Ga.App. 521, 526, 171 S.E. 162 (1933). But, this standard is quite different from the standard of agency which the defendant urges this Court to adopt. The defendant has failed to convince this Court that the existence of an agency relationship is a prerequisite to recovery under O.C.G.A. § 9–2–7.

█ In the present case, the jury found that the plaintiff rendered valuable services to the defendant which he accepted. This Court finds, as a factual matter,[9] that these services were not rendered voluntarily but were rendered upon the expectation that they would be paid for. This finding is supported by the fact that the parties

entered into an express contract which was supported by consideration on both sides. Therefore, this Court finds that the plaintiff has satisfied all of the requirements of O.C.G.A. § 9–2–7.

### C. *Plaintiff's Status As The Agent of The Buyer*

█ The defendant contends that the plaintiff is not entitled to any recovery because it was acting as the agent for the buyer, SDC, and was therefore not attempting to secure the best price for the defendant. This situation can be analogized to the situation where there is a dual agency. In such a case, Georgia law is clear:

Contracts of dual agency are not void per se, but are void only when the fact that the agent represented both parties was unknown. The burden of making out a defense to a prima facie liability rests upon the defendant; and where dual agency is relied on, *it is necessary for the defendant to allege and prove not only the incompatible relationship, but also that it was unknown.*

*Williamson v. Martin-Ozburn Realty Co.*, 19 Ga.App. 425, 428, 91 S.E. 510 (1916) (emphasis added); *see also, Erwin v. Wender,* 78 Ga.App. 94, 98, 50 S.E.2d 244 (1948).

█ In the present case, the jury specifically found that the plaintiff did not conceal from the defendant that it was acting as an agent for SDC. Interr. No. II(15). This finding is supported by the evidence. Therefore, the defendant's argument that the plaintiff is not entitled to recover under *quantum meruit* because it was acting as SDC's agent is without merit.

---

7. The defendant does not appear to be arguing that O.C.G.A. § 10–6–32 is the *exclusive* remedy for a real estate broker suing under *quantum meruit*. In any event, Georgia courts have allowed recovery under O.C.G.A. § 9–2–7 to brokers suing under *quantum meruit. E.g., Lundeen, supra,* 145 Ga.App. at 674, 244 S.E.2d 622.

8. The jury specifically found that the plaintiff rendered valuable services to the defendant

which he accepted in the amount of $40,000. Thus, except for the agency issues, the plaintiff has clearly met the requirements for recovery under the theory of *quantum meruit.*

9. Fed.R.Civ.P. 49(a) gives this Court the authority to resolve any factual questions relevant to the judgment which were not submitted to the jury.

In sum, the jury found that the plaintiff rendered valuable services to the defendant which he accepted in the sum of $40,000.00. This finding is amply supported by the record and is allowable under Georgia law. Accordingly, the plaintiff is entitled to recover $40,000.00 from the defendant under the theory of *quantum meruit.*

## IV. EXPENSES OF LITIGATION

Under Georgia law, attorney's fees and expenses of litigation are not allowed in contract actions unless the defendant "has acted in bad faith in making the contract, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." O.C.G.A. § 13–6–11. The jury only has to make one of these findings to award attorney's fees in contract actions. *Marler v. River Creek Associates,* 138 Ga.App. 471, 226 S.E.2d 311 (1976). The jury found that the defendant in the present case was stubbornly litigious and did cause the plaintiff unnecessary trouble and expense. Interr. Nos. I(4) and I(6). The jury reached contradictory findings as to the defendant's bad faith. Interrogatory Nos. I(5), I(7), I(8) II(3), and II(17). The issues before the Court are whether the facts support a finding of stubborn litigiousness and unnecessary trouble and expense and, whether the jury actually found that the defendant acted in bad faith.[10]

Under Georgia law, in the absence of bad faith, there can be no recovery of attorney's fees if there exists a bona fide controversy between the parties.[11] *Beaudry Ford, Inc. v. Bonds,* 139 Ga.App. 230, 228 S.E.2d 208 (1976); *Georgia-Carolina Brick & Tile Co. v. Brown,* 153 Ga.App.

747, 266 S.E.2d 531 (1980); *Thompson Enterprises, Inc. v. Coskrey,* 168 Ga.App. 181, 308 S.E.2d 399 (1983). The evidence in this case overwhelmingly establishes that there existed a bona fide controversy between the parties. The jury found that the purchaser, SDC, did not tender to the defendant all of the documents specified in the original contract between the parties. Interr. No. II(1). In fact, the defendant presented an expert witness who testified that the documents tendered to the defendant on the scheduled closing date were unenforceable under Georgia law. *See* Testimony of Mr. Killorin. The plaintiff did not present any evidence to rebutt this testimony. Because the sales contract between the defendant and SDC was unenforceable, the defendant did not have an obligation under the contract to pay the plaintiff its commission.[12] *Busbin v. Suburban Realty, Inc.,* 236 Ga. 783, 225 S.E.2d 316 (1976). In fact, the jury specifically found that the plaintiff was not entitled to any damages on its breach of contract claim. Interr. No. I(9). Thus, the jury found against the plaintiff on one of its two major claims.

The defendant's argument in this case was that he was not obligated to pay the plaintiff its commission because the plaintiff never produced proper closing documents and because the plaintiff defrauded the defendant. Although the jury found for the plaintiff on the latter claim, there was evidence to support the defendant's position. More importantly, however, Georgia courts have repeatedly held that the "mere refusal to pay a disputed claim is not the equivalent of stubborn litigiousness or causing unnecessary trouble and expense." *Franchise Enterprise, Inc. v.*

---

**10.** Of course, this Court must also determine if a finding of bad faith was supported by the evidence. The legal standard which this Court must apply when reviewing the jury's findings of stubborn litigiousness and unnecessary trouble and expense is whether any jury could have reasonably made those findings. *See Bigelow-Sanford, Inc. v. Gunny Corp.,* 649 F.2d 1060, 1066 (5th Cir.1981).

**11.** It appears that the absence of a bona fide controversy is a prerequisite to the recovery of

attorney's fees under both the stubbornly litigious standard and the unnecessary trouble and expense standard. *See generally Franchise Enterprises, Inc. v. Ridgeway,* 157 Ga.App. 458, 278 S.E.2d 33 (1981).

**12.** The plaintiff produced no evidence that demonstrated that the buyer ever tendered the appropriate documents to the defendant in accordance with the $790,000.00 contract.

*Ridgeway,* 157 Ga.App. 458, 460, 278 S.E.2d 33 (1981).

After a review of all of the evidence in this case, this Court concludes that no reasonable jury could have found that there was no bona fide controversy between the parties. The defendant has consistently argued in this case that the plaintiff was not entitled to any recovery under *quantum meruit* because the plaintiff was rendering valuable services for the buyer, SDC, not for the defendant. The evidence clearly shows that the first contract presented to the defendant by the plaintiff for the sale of his land was for the sum of $175,000.00. The defendant eventually sold his land to SDC for $950,000.00. As will be discussed in the next section of this order, this Court believes that the jury found that the defendant, in good faith, believed he did not owe the plaintiff any money for simply introducing him to the buyer. The mere fact that the defendant was mistaken in this belief does not entitle the plaintiff to attorney's fees under Georgia law. Because there is no evidence in the record to support the jury's findings that the defendant was stubbornly litigious or caused the plaintiff unnecessary trouble and expense, this Court vacates their findings on these issues.[13]

The jury made seemingly contradictory findings on the issue of the defendant's alleged bad faith. In Interr. Nos. I(5) and I(7), the jury found that the defendant acted in bad faith in refusing to pay the plaintiff its commission.[14] And, in Interr. No. II(3), the jury found that the defendant did not have a valid reason for failing to close the $790,000.00 contract. These answers, however, are inconsistent with various other answers given by the jury. For example, in Interr. No. I(8), the jury found that the defendant *did not* act in bad faith by attempting to defraud the defendant out of its commission. And, in Interr. No. II(17), the jury answered no to the following question:

> Did Mr. Nodvin refuse to close the contract in bad faith and solely to avoid paying the commission?

Furthermore, the jury found that the parties intended that a commission be paid only in the event that the $790,000.00 closed. Interr. Nos. II(4) and (5), and that the $790,000.00 contract did not close on the terms and conditions as set forth in that contract.[15] Interr. No. II(2).

This Court believes that it is impossible to reconcile the answers to Interr. Nos. 7 and 8. It is possible, however, to reconcile the other answers given by the jury. Based on the jury's answers to Interr. Nos. II(3) and II(17), this Court believes that the jury found that the defendant, in fact, did not have a valid reason for failing to close the contract but that the defendant subjectively felt that he had a valid reason for not closing the contract.[16] Similarly, the jury must have decided that, in light of the services rendered to the defendant by the plaintiff, the defendant was mistaken in thinking that he did not have to pay the plaintiff for its services simply because the buyer did not tender to the defendant all of the documents required by the $790,000.00

**13.** It is important to note that the jury was not asked whether or not a bona fide controversy was present in this case. It is therefore unclear whether the jury's findings on stubborn litigiousness and unnecessary trouble and expense are findings sufficient, in and of themselves, to warrant the imposition of attorney's fees in this case. In any event, this Court finds that there is no evidence in the record to support these findings.

**14.** In Interrogatory No. 7, the jury found that the defendant acted in bad faith by *conspiring* to defraud the plaintiff out of its commission.

**15.** This answer is seemingly inconsistent with Interrogatory No. 1.

**16.** This conclusion is consistent with the answer to Interr. No. 8 but inconsistent with the answer to Interr. No. 7. As noted earlier, these two Interrogatories are impossible to reconcile. In addition, the jury also must have concluded that the fact that there was an improper tender at the closing did not justify the plaintiff's refusal to go through with the sales transaction. In light of the contractural language in this case, that finding is contrary to Georgia law. *See, Busbin, supra.*

sales contract. This mistaken assumption by the defendant, however, without more, does not entitle the plaintiff to attorney's fees in this case.

This Court has carefully reviewed all of the Interrogatories given to the jury and all of the evidence in the record. This Court finds that the jury must have decided that the defendant made a honest mistake in deciding that he was not obligated to pay the plaintiff for its services and that this finding is supported by the evidence. Accordingly, there was no bad faith on the part of the defendant and the plaintiff is not entitled to its litigation expenses.[17]

## V. THE DEFENDANT'S COUNTERCLAIM

The jury found against the defendant on every issue raised by his counterclaim. These findings are supported by the evidence and therefore judgment will be entered against the defendant on his counterclaim.

In sum, the Clerk of the Court is DIRECTED to enter a judgment for the plaintiff in the amount of $40,000.00. The plaintiff is not entitled to any expenses of litigation. The Clerk is further DIRECTED to enter judgment against the defendant on his counterclaim. This order resolves all of the issues in this case.[18]

### SPECIAL INTERROGATORIES TO THE JURY

#### I.

1.   Did the $790,000 Contract close when Defendant transferred his property to Purchaser on May 13, 1983, for $950,000? Coldwell Banker has the burden of proof.

YES ✓

NO _____

2.   If your answer to number one is no, did Plaintiff effect the sale of the Nodvin Property or was Plaintiff the procuring cause which culminated in the sale of the Nodvin Property?  Coldwell Banker has the burden of proof.

YES ✓

NO _____

3.   If your answer to number one is no, did Plaintiff render valuable services to Defendant which he accepted?

Coldwell Banker has the burden of proof.

YES ✓

NO _____

17.  This Court finds that the jury's answers to the questions concerning bad faith are susceptible only to the interpretation heretofore described.

18.  Attached as Exhibit "A" is a copy of the jury's answers to the Special Interrogatories.

4. If your answer to either number one, two or three is yes, do you find that Marvin Nodvin was stubbornly litigious in refusing to pay Coldwell Banker its commission? Coldwell Banker has the burden of proof.

YES ✓

NO

5. If your answer to either number one, two or three is yes, did Marvin Nodvin act in bad faith[1] in entering into the $790,000 Contract or[2] in refusing to pay Coldwell Banker its commission? Coldwell Banker has the burden or proof.

YES      (1)    _A_ _i_    (1st?)

NO      (2)    Yes

6. If your answer to either number one, two or three is yes, did Marvin Nodvin cause Coldwell Banker unnecessary trouble and expense to collect its commission? Coldwell Banker has the burden of proof.

YES ✓

NO

7. If your answer to either number one, two or three is yes, did Marvin Nodvin act in bad faith by conspiring to deprive or defraud Coldwell Banker out of its brokerage commission? Coldwell Banker has the burden of proof.

YES ✓

NO

8. If your answer to either number one, two or three is yes, did Defendant act in bad faith by attempting to deprive or defraud Coldwell Banker out of its brokerage fees? Coldwell Banker has the burden of proof.

YES

NO ✓

9.   If your answer to either number one, two or three is yes, what damages, if any, did Coldwell Banker sustain? Coldwell Banker has the burden of proof.

$   *None*

10.   If your answer to either number four, five or six is yes, what is the reasonable value of Coldwell Banker's expenses of litigation, including attorney's fees?   Coldwell Banker has the burden of proof.

$ *42,000*

11.   Are the circumstances of this case such that exemplary or punitive damages should be awarded to Coldwell Banker? Coldwell Banker has the burden of proof.

YES_____

NO____*✓*_____

12.   If your answer to number eleven is yes, what amount of exemplary damages should be awarded to Coldwell Banker?   Coldwell Banker has the burden of proof.

$ *None*   .

## II.

1.   Did the purchaser (Silver Dollar City, SDC Recreation or Harry Hargrave) tender to Mr. Nodvin at the april 21, 1983 scheduled closing all the documents specified in the $790,000 contract and in the manner and form specified in the contract? Coldwell Banker has the burden of proof.

YES_____

NO____*✓*_____

2.   Did the $790,000 Contract close on the terms and conditions as set forth in the contract?   Coldwell Banker has the burden of proof.

YES_____

NO____*✓*_____

3. Did Marvin Nodvin have a valid reason for not closing the $790,000 Contract? Marvin Nodvin has the burden of proof.

YES_____

NO_____✓_____

4. Did the parties to the $790,000 Contract intend that Mr. Nodvin would be obligated to pay Coldwell Banker Commercial Group, Inc. a real estate commission even if the $790,000 Contract did not actually close? Coldwell Banker has the burden of proof.

YES_____

NO_____✓_____

5. Did the parties to the $790,000 Contract intend that Mr. Nodvin would be obligated to pay Coldwell Banker Commercial Group, Inc. a real estate commission only in the event that the $790,000 Contract closed? Marvin Nodvin has the burden of proof.

YES_____✓_____

NO_____

6. Was Coldwell Banker Commercial Group, Inc. acting as Marvin Nodvin's agent in the sale of his property? Coldwell Banker has the burden of proof.

YES_____

NO_____✓_____

7. Was Coldwell Banker Commercial Group, Inc. acting as the agent for the purchaser (Silver Dollar City, SDC Recreation or Harry Hargrave) in the purchase of Mr. Nodvin's property? Marvin Nodvin has the burden of proof.

YES_____✓_____

NO_____

8. If your answer to question seven is yes, did Coldwell Banker Commercial Group, Inc. disclose in writing to Marvin

Nodvin that it was representing the purchaser? Coldwell Banker has the burden of proof.

YES_____

NO____✓_____

9. Was Coldwell Banker Commercial Group, Inc. acting as agent for both Marvin Nodvin and the purchaser (Silver Dollar City, SDC Recreation or Harry Hargrave) in the sale of the Nodvin property? Marvin Nodvin has the burden of proof.

YES_____

NO____✓_____

10. If your answer to question nine is yes, did Coldwell Banker Commercial Group, Inc. disclose in writing to Marvin Nodvin that it was representing both him and the purchaser? Coldwell Banker has the burden of proof.

YES_____

NO_____

11. Was Coldwell Banker Commercial Group, Inc. acting as Marvin Nodvin's agent in the sale of his property pursuant to the $950,000 land exchange agreement? Coldwell Banker has the burden of proof.

YES_____

NO____✓_____

12. Were services rendered by Coldwell Banker Commercial Group, Inc. to the purchaser (Silver Dollar City, SDC Recreation or Harry Hargrave)? Marvin Nodvin has the burden of proof.

YES____✓_____

NO_____

13. Were services rendered by Coldwell Banker Commercial Group, Inc. to Marvin Nodvin? Coldwell Banker has the burden of proof.

YES____✓_____

NO_____

14. Did Coldwell Banker Commercial Group, Inc., as Marvin Nodvin's agent, find a purchaser ready, able and willing to buy who actually offered to buy on the terms stipulated by Mr. Nodvin? Coldwell Banker has the burden of proof.

YES_____

NO____✓_____

15. Did Coldwell Banker Commercial Group, Inc., acting through either Ray Uttenhove or Nelson Brown, misrepresent to Marvin Nodvin or conceal from him whom they were representing in regard to the sale of the Nodvin property. Marvin Nodvin has the burden of proof.

YES_____

NO____✓_____

16. Did Coldwell Banker Commercial Group, Inc., acting through either Ray Uttenhove or Nelson Brown, misrepresent to Mr. Nodvin or conceal from him whom the true value of his property? Marvin Nodvin has the burden of proof.

YES_____

NO____✓_____

17. Did Mr. Nodvin refuse to close the contract in bad faith and solely to avoid paying the commission? Coldwell Banker has the burden of proof.

YES_____

NO____✓_____

18. Did Coldwell Banker Commercial Group, Inc. render valuable services to Mr. Nodvin. Coldwell Banker has the burden of proof.

YES____✓_____

NO_____

19. What was the reasonable value, if any, of Coldwell Banker Commercial Group, Inc.'s services to Mr. Nodvin? Coldwell Banker has the burden of proof.

$ _40,000_

20. What amount of expenses of litigation, if any, do you award Coldwell Banker Commercial Group, Inc.

$ _42,000_

21. What amount of compensatory damages, if any, do you find that Marvin Nodvin sustained? Marvin Nodvin has the burden of proof.

$ _None_

22. If you find that Marvin Nodvin is entitled to expenses of litigation, what amount, if any, do you award him as expenses of litigation? Marvin Nodvin has the burden of proof.

$ _None_

23. What amount of exemplary or punitive damages, if any, do you award Marvin Nodvin? Marvin Nodvin has the burden of proof.

$ _None_

### III.

1. Was Coldwell Banker acting as the agent of Marvin Nodvin? If your answer to number one is no, do not answer questions 2-11. Coldwell Banker has the burden of proof.

YES_____

NO_____✓_____

2. If your answer to number one is yes, did Coldwell Banker, or any of its agents or employees, fail to disclose to Marvin Nodvin the proposed purchase of the Parak tract at a time

when they had a duty to disclose?    Marvin Nodvin has the burden of proof.

YES _____

NO _____

3.    If your answer to number one is yes, did Coldwell Banker, or any of its agents or employees fail to disclose to Marvin Nodvin that it was acting on behalf of an undisclosed principal for the purchase of the Parak tract? Marvin Nodvin has the burden of proof.

YES _____

NO _____

4.    If your answer to number one is yes, did Coldwell Banker, or any of its agents or employees fail to disclose to Marvin Nodvin that it had previously represented Harry Hargrave with respect to the Route 41 properties?    Marvin Nodvin has the burden of proof.

YES _____

NO _____

5.    If your answer to number one is yes, did Coldwell Banker, or any of its agents or employees fail to disclose to Marvin Nodvin that Harry Hargrave was acting as a trustee on behalf of SDC Recreation?    Marvin Nodvin has the burden of proof.

YES _____

NO _____

6.    If your answer to number one is yes, did Coldwell Banker, or any of its agents or employees fail to disclose to Marvin Nodvin that there was no trust in existence of which Harry Hargrave was trustee?    Marvin Nodvin has the burden of proof.

YES _____

NO _____

7.   If your answer to number one is yes, did Coldwell Banker, or any of its agents or employees wrongfully conspire to cause Marvin Nodvin to sell his property below fair market value? Marvin Nodvin has the burden of proof.

YES_____

NO_____*Blank*_____

8.   If your answer to number one is yes, did Coldwell Banker, or any of its agents or employees, fail to disclose any dual agency or conflicts of interests that might have existed? Marvin Nodvin has the burden of proof.

YES_____*Blank*_____

NO_____

9.   If your answer to number one is yes, and your answer to either numbers 2, 3, 4, 5, 6, 7, or 8 is yes, has Marvin Nodvin been damaged and, if so, what amount of money, if any, should be awarded?  Marvin Nodvin has burden of proof.

YES_____

NO_____*Blank*_____

$_____None_____

10.   If your answer to number one is yes and your answer to either numbers 2, 3, 4, 5, 6, 7, or 8 is yes, is Coldwell Banker liable to pay Marvin Nodvin's expenses of litigation, including attorney's fees?  Marvin Nodvin has the burden of proof.  If so, what amount?

YES_____*Blank*_____

NO_____

$_____None_____

11.   If your answer to any of questions 2-8 is yes, what amount of exemplary or punitive damages, if any, do you award Marvin Nodvin?  Marvin Nodvin has the burden of proof.

$_____None_____

## IV.

1.   Was Coldwell Banker properly licensed as a real estate broker when it was involved with the sale of the Nodvin property? Coldwell Banker has the burden of proof.

YES_____✓_____

NO_____

2.   Did Coldwell Banker, or any of its agents or employees, ①engage in a scheme to confuse Marvin Nodvin and to ②violate the Georgia Real Estate Commission rules and regulations?   Marvin Nodvin has the burden of proof.

YES_____          ① Yes

NO_____          ② No

3.   Did Coldwell Banker, or any of its agents or employees, engage in deceptive trade practices?   Marvin Nodvin has the burden of proof.

YES_____

NO_____✓_____

4.   Did Coldwell Banker, or any of its agents or employees, wrongfully use the United States Mails?   Marvin Nodvin has the burden of proof.

YES_____

NO_____✓_____

5.   Did Coldwell Banker, or any of its agents or employees, wrongfully use the wire, radio or television?   Marvin Nodvin has the burden of proof.

YES _____

NO_____✓_____

6.   Has Coldwell Banker, or any of its agents or employees, engaged in racketeering activities?   Marvin Nodvin has the burden of proof.

YES_____

NO_____′_____

7. Has Coldwell Banker, or any of its agents or employees, engaged in false advertising? Marvin Nodvin has the burden of proof.

YES_____

NO_____✓_____

8. If your answer to either number 2, 3, 4, 5, 6, or 7 is yes, has Marvin Nodvin been damaged, and if so, what amount of money, if any, should he be awarded? Marvin Nodvin has the burden of proof.

YES_____

NO_____✓_____

$_____None_____

V.

1. Did any of Coldwell Banker's agents or employees make a misrepresentation of a material existing fact to Marvin Nodvin or fail to disclose a material fact that should have been disclosed to Marvin Nodvin? Marvin Nodvin has the burden of proof.

YES_____

NO_____✓_____

2. If the answer to question one is yes, did such employee or agent know the falsity of the misrepresentation at the time it was made, or should such employee have known that the misrepresentation was false? Marvin Nodvin has the burden of proof.

YES_____Blank_____

NO_____

3. If the answer to question one is yes, did such employee or agent intend to induce Marvin Nodvin to rely upon the misrepresentation or the omission of the material fact or facts? Marvin Nodvin has the burden of proof.

YES_____Blank_____

NO_____

872

4.  If the answer to question one is yes, did Marvin Nodvin rely to his detriment upon the misrepresentation or the omission of the material fact or facts?  Marvin Nodvin has the burden of proof.

YES _____*blank*_____

NO _____

5.  If the answer to question one is yes, did Marvin Nodvin suffer any damage as the proximate result of the misrepresentation or omission of the material fact or facts?  Marvin Nodvin has the burden of proof.

YES _____*blank*_____

NO _____

6.  If the answers to all of Questions 1-5 are yes, what amount of compensatory damages should be awarded to Marvin Nodvin as a result of Coldwell Bankers misrepresentations or omissions of material fact or facts.

$ _____*None*_____

7.  If you find that Coldwell Banker made misrepresentations or omissions of material fact or facts, what amount of exemplary or punitive damages, if any, do you award Marvin Nodvin?  Marvin Nodvin has the burden of proof.