A93A0681, A93A0682. JACKSON et al. v. WILLIAMS; and vice versa.
(434 SE2d 98)

ANDREWS, Judge.

On April 23, 1991, Paul Jackson and W. C. Crider filed a complaint against Williams for breach of contract, alleging that in June 1988 Williams contracted with them to construct a road. According to the complaint, Williams breached the contract and was liable for various damages arising out of the breach.

In April 1992, the case was tried to a jury in Fulton County Superior Court for five days. On April 14, 1992, the jury returned a verdict in favor of Jackson and Crider for $715,000 in contractual damages and for $40,000 for Williams' bad faith. On April 16, 1992, the trial court entered an order by which it directed a verdict for Williams on plaintiffs' claim for attorney fees; the trial court entered judgment on the plaintiffs' main claim for $715,000. Having made a motion for directed verdict which the trial court denied, Williams then filed a motion for j.n.o.v., or in the alternative, for a new trial.

On October 6, 1992, the trial court granted the motion for j.n.o.v. In its order, the trial court entered judgment in favor of Williams and declared that he recover costs from the plaintiffs. The trial court found: (1) that there was no binding and enforceable contract between the plaintiffs and the defendant because the alleged contract lacked sufficient certainty; and (2) that if there was an oral agreement, it concerned an interest in land and was unenforceable under the statute of frauds; and (3) that if there was an enforceable oral agreement, it was released and/or terminated by operation of law or by mutual rescission, abandonment or a novation by the plaintiffs' consent to the assignment of the lease between the plaintiffs and DMH Holdings, Inc.; and (4) that if there was an enforceable oral agreement, there was no legal evidence and no legal determination as to the proper amount of damages, if there had been any damages. From that order, Jackson and Crider appeal in Case No. A93A0681. In Case No. A93A0682, Williams cross-appeals.

Evidence at trial was that Jackson and Crider, who were partners in a real estate development business, leased a piece of property, which they subsequently bought. Jackson and Crider entered into a temporary lease agreement with Williams in March 1988; Williams planned to use the part of the property which he leased for a quarry.

In the Spring of 1989, pursuant to Williams' request, the quarry

site was moved north on the property. On September 6, 1989, Jackson and Crider and DMH Holdings, Ltd., through its agent Williams, entered into another lease agreement for the quarry property. There was testimony that the parties were represented by counsel at the signing of these documents. On December 11, 1989, the same parties executed a "First Amended and / Restated Lease Agreement" regarding the same property; the lease for the quarry property was for five years.

In April 1990, DMH Holdings obtained Jackson and Crider's permission to assign its leasehold estate in the quarry to Vulcan Materials Company. A letter from both companies to appellants dated April 23, 1990 confirms that transfer. Various other documents regarding the assignment, including an "asset purchase and assignment agreement" were also executed on that day. In connection with the transfer, DMH Holdings and Williams executed a covenant not to compete with Vulcan Materials.

The dispute here concerns Jackson and Crider's contention that in June 1988, Williams entered into an oral contract in which he agreed to construct a road which would connect the quarry with a nearby highway. It is undisputed that there is no written agreement evidencing this agreement. There was evidence that Williams performed some of the preliminary construction on the road in 1989 and 1990, but in April 1990, he stopped work and repudiated the alleged contract.

There was testimony that subsequent to Williams' departure, Jackson and Crider made efforts toward constructing the road and learned that a portion of the land for the road was in a floodplain and that a special permit and a bridge would be required to complete the project.

### Case No. A93A0681

1. In their first enumeration of error, Jackson and Crider claim that the trial court erred in granting the defendant's motion for j.n.o.v. since there was a binding contract between the plaintiffs and the defendant. "The primary question for determination is whether the evidence introduced, with all reasonable deductions . . . demanded a verdict for the defendant, as the standards for granting a motion for judgment n.o.v. are the same as those governing direction of a verdict. The motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a 'one way' verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this

approach governs the actions of appellate courts as well as trial courts." (Citations and punctuation omitted.) *Famiglietti v. Brevard Med. Investors, Ltd.*, 197 Ga. App. 164 (1) (397 SE2d 720) (1990).

According to appellants, the contract provided that they would provide the right-of-way for the road and Williams would take all other necessary steps to construct the road, including funding the unspecified costs of construction and acquiring any "necessary governmental permits." Jackson and Crider contend that Williams had contracted to build a road which would comply with county road specifications, although the particulars of this compliance were left undefined.

Jackson and Crider contend that the consideration for the contract was the benefit to the quarry property that the greater accessibility would provide, although they conceded that they also would benefit from the road. They argue that the parties discussed the agreement frequently and that they even filed a "preapplication for public assistance" for the project. Jackson and Crider contend that after the quarry was moved (thus changing the location of a road), Williams reaffirmed his commitment to building the road, and that they acquired the right-of-way at that time. Subsequently, Williams hired engineering consultants, who began staking out the route of the road, which allowed Williams to begin grading and dirt moving.

Williams' alleged breach of the contract coincided roughly with the approved assignment of the quarry property to Vulcan Materials. Jackson and Crider argue that the documents executed in connection with the assignment did not refer to the road because Williams had a personal obligation to build the road, which duty survived the assignment of the property to Vulcan Materials.

We conclude that the trial court's determination that the contract was unenforceable because of its indefiniteness was proper. "A contract is an agreement between two or more parties for the doing or not doing of some specified thing." OCGA § 13-1-1. "In order that it may allege an agreement, a petition must set forth a contract of such certainty and completeness that either party may have a right of action upon it." *Peachtree Med. Bldg. v. Keel*, 107 Ga. App. 438, 440 (130 SE2d 530) (1963). "The requirement of certainty extends not only to the subject matter and purpose of the contract, but also to the parties, consideration, and even the time and place of performance where these are essential. When a contract is substantially alleged, some details might be supplied under the doctrines of reasonable time or reasonable requirements. But indefiniteness in subject matter so extreme as not to present anything upon which the contract may operate in a definite manner renders the contract void. . . ." (Citations and punctuation omitted.) *Peachtree Med.*, supra at 441. Furthermore, "[t]he first requirement of the law relative to contracts is that

there must be a meeting of the minds of the parties, and mutuality, and in order for the contract to be valid the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon. A contract cannot be enforced in any form of action if its terms are incomplete or incomprehensible." (Citations and punctuation omitted.) *Bagwell-Hughes, Inc. v. McConnell*, 224 Ga. 659, 661-662 (164 SE2d 229) (1968); see also *Green v. Zaring*, 222 Ga. 195 (149 SE2d 115) (1966); *Patel v. Gingrey Assoc.*, 196 Ga. App. 203 (2) (395 SE2d 595) (1990).

Contrary to appellants' arguments, the alleged contract here was too indefinite to be enforceable. For example, there were no discussions between the parties regarding the material content of the road, the precise location of the road or its dimensions, or the estimated cost of the project. There were no discussions regarding the time period for the construction; appellants do not even contend that there was a time within which the road was to be completed. There was no evidence of an agreement containing any definiteness or certainty.

Although it is true that, in some contexts, partial performance may supply mutuality and consideration or definiteness, see *Hill Aircraft &c. Corp. v. Planes, Inc.*, 158 Ga. App. 151 (2) (279 SE2d 250) (1981); *Steinemann v. Vaughn & Co., Ltd.*, 169 Ga. App. 573 (1) (313 SE2d 701) (1984), in the instant context, Williams' part performance does not render the contract enforceable. "These deficiencies were not cured by performance of [Williams], because the agreement relied upon was so vague, indefinite and uncertain 'as to make it impossible for courts to determine what, if anything, was agreed upon, therefore rendering it impossible to determine whether there had been performance.' " *Bagwell-Hughes*, supra at 662.

2. Because our conclusion with respect to the first enumeration of error is dispositive of the case, we need not address appellants' other enumerations of error.

### Case No. A93A0682

3. In the cross-appeal, Williams claims that the trial court erred in various ways by failing to grant his motion for new trial. In its order granting Williams' motion, the trial court concluded, and we agree, that the grant of the motion for j.n.o.v. rendered Williams' motion for new trial moot. Further, Williams can show no harm in the court's order. Accordingly, the cross-appeal is dismissed.

*Judgment affirmed in Case No. A93A0681; case dismissed in Case No. A93A0682. Pope, C. J., and Birdsong, P. J., concur.*

DECIDED JULY 2, 1993 —
RECONSIDERATION DENIED JULY 19, 1993 —

*Vincent, Chorey, Taylor & Feil, John L. Taylor, Jr., Celeste Mc-Collough*, for appellants.
*Morris, Manning & Martin, Joseph R. Manning, Laura M. Tate*, for appellee.