A94A1580. CHEROKEE FALLS INVESTMENTS, INC. et al.
v. SMITH et al.
(445 SE2d 572)

BLACKBURN, Judge.

The appellants, Cherokee Falls Investments, Inc. (CFI), and William Crolley, an officer of CFI, filed the instant action against Jarrell C. Brantley and appellees John H. Smith, Inc. (the corporation), and John H. Smith, the corporation's president, seeking damages and, in the alternative, specific performance for an alleged breach of a joint venture agreement contained in an addendum to a contract for the sale of real property.[1] Crolley and CFI also sought damages for Smith's and the corporation's alleged interference with an oral contract between Crolley and Brantley for the purchase and control of certain real property.

Following the commencement of discovery, Smith and the corporation moved for summary judgment, asserting that the joint venture agreement was too vague and indefinite for enforcement, that the contract at most was an unenforceable agreement to agree, and that Crolley and CFI did not have an actual contract with Brantley with which Smith and the corporation could interfere. The trial court granted the motion for summary judgment, and this appeal followed.

The record viewed in the light most favorable to Crolley and CFI, the nonmovants, shows that CFI is a Georgia corporation involved in the purchase and development of real estate. CFI, Crolley, and Brantley owned 219 acres of contiguous property located in Cherokee

---

[1] Brantley is not involved in this appeal.

County and CFI intended to develop the property in four separate phases as a residential neighborhood known as Cherokee Falls Subdivision. CFI owned the 60 acres of property planned for development in the first phase of the subdivision.

In June 1992, Crolley contacted Smith to develop the property in the Cherokee Falls subdivision. On June 18, 1992, Smith and Crolley, in their individual capacities, executed an agreement for the sale of the 60 acres in Phase I of the subdivision. The only statements concerning the parties' purported joint venture agreement was contained in an addendum to the Special Stipulations provision in the sales contract and provided in Section 11 that "5% lot sales to be paid to John Smith by venture," and in Section 15 that "[a]ll future development to be done by a Venture between John H. Smith, Inc. and Cherokee Falls Investments, Inc." The addendum did not contain any details on the joint venture or the parties' rights and obligations under the joint venture. The addendum did contain a list of the acreage and the price of the property in each phase of the subdivision but did not describe with particularity the properties within the subdivision.

Crolley later sold the property in Phase I of the subdivision to Smith, transferring the property to Smith by a warranty deed on June 24, 1992. An addendum to the closing statement on the property provided that "[t]he terms and conditions of the contract between the parties not fulfilled prior to closing shall survive the execution and delivery of the warranty deed, including provisions relating to the subsequent development of Phases II, III, and IV." Smith subsequently developed the property based upon many of the stipulations contained in the addendum to the sales contract.

In September 1992, Smith presented Crolley with a detailed joint venture agreement and Crolley refused to agree to the terms contained therein. The next month, Smith began negotiations with Brantley for the sale of Brantley's property located in the subdivision, and Brantley sold the property to Smith on January 4, 1993. It is undisputed that Brantley was introduced to Smith by Crolley and that the two had not previously known each other. The evidence in the record is in dispute as to whether Brantley and Crolley entered into a verbal agreement for the sale of Brantley's property to Crolley and whether Smith knew of this verbal agreement. The record does show that Crolley entered into a contract with a realtor for the sale of Brantley's property in October 1992.

1. " 'A contract is an agreement between two or more parties for the doing or not doing of some specified thing.' [Cit.] 'In order that it may allege an agreement, a petition must set forth a contract of such certainty and completeness that either party may have a right of action upon it.' [Cit.] 'The requirement of certainty extends not only to the subject matter and purpose of the contract, but also to the par-

ties, consideration, and even the time and place of performance where these are essential. When a contract is substantially alleged, some details might be supplied under the doctrines of reasonable time or reasonable requirements. But indefiniteness in subject matter so extreme as not to present anything upon which the contract may operate in a definite manner renders the contract void.' [Cit.] Furthermore, 'the first requirement of the law relative to contracts is that there must be a meeting of the minds of the parties, and mutuality, and in order for the contract to be valid the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon. A contract cannot be enforced in any form of action if its terms are incomplete or incomprehensible.' [Cits.]" (Punctuation omitted.) *Jackson v. Williams*, 209 Ga. App. 640, 642-643 (434 SE2d 98) (1993). In addition, " '[a] court of equity will not decree the specific performance of a contract [involving an interest in land] unless there is a definite and specific statement of the terms of the contract.' " (Citations omitted.) *Green v. Zaring*, 222 Ga. 195, 198 (149 SE2d 115) (1966).

In the case sub judice, contrary to CFI and Crolley's assertions, the alleged contract herein was too indefinite to be enforceable. The record shows that the sales contract at issue did not contain a clear expression of the terms of the parties' agreement on the joint venture on such issues as how or when the development was to occur, the allocation of costs and profits between the parties, the proposed completion date for the development project, or whether the joint venture was limited to development within the Cherokee Falls subdivision. "[N]owhere in the document is there any statement with reasonable certainty as to what the parties were obligating themselves to do to effect what they envisioned, or as to what they envisioned." Id. at 198. Smith's mere purchase of property within the subdivision did not cure those deficiencies. See *Jackson*, supra at 643. Consequently, the purported joint venture agreement is lacking in certainty, and hence, is unenforceable, and will not support an action for damages or specific performance.

2. We reject CFI and Crolley's assertion that the trial court erred in granting summary judgment on their claim of tortious interference with their contractual relations with Brantley. " 'In order to recover for a third party's intentional interference with contractual relations, a plaintiff must show that damage to his rights or obligations *under a contract* proximately resulted from the third party's alleged interference.' [Cit.]" (Emphasis supplied.) *Moore v. Barge*, 210 Ga. App. 552, 556 (436 SE2d 746) (1993). In the case sub judice, it is undisputed that Crolley and CFI did not have a written contract with Brantley for the sale of the property, and "oral promises to convey interests in land are unenforceable under the Statute of Frauds. OCGA § 13-5-30

(4)." *East Piedmont 120 Assoc. v. Sheppard*, 209 Ga. App. 664, 665 (434 SE2d 101) (1993). Accordingly, there was no contractual relationship with which Smith and the corporation could interfere. Absent an enforceable contract between Brantley, CFI, and Crolley, Crolley and CFI could not recover against Smith and the corporation for any alleged tortious interference with their contractual relations with Brantley. See *Integrated Micro Systems v. NEC Home Electronics (USA)*, 174 Ga. App. 197 (1) (329 SE2d 554) (1985). Consequently, summary adjudication in favor of Smith and the corporation was warranted.

*Judgment affirmed. Birdsong, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 22, 1994.

*Bovis, Kyle & Burch, C. Sam Thomas, Wade H. Purcell*, for appellants.

*Brock & Clay, Richard W. Calhoun*, for appellees.