## A06A0023. WNUK v. DOYLE.
### (623 SE2d 740)

PHIPPS, Judge.

Carol Wnuk became interested in purchasing Larry Garner's 50 percent interest in a tract of land jointly owned by Garner and Leta Doyle. Garner entered into a written contract to sell his interest to Wnuk. Complications ensued, however, and Wnuk's purchase was not closed before the expiration date set forth in the contract. Wnuk continued to attempt to consummate the purchase by bringing Tom Parson and Harry Phillips into the deal. After Wnuk introduced Parson and Phillips to Doyle, the latter three individuals acquired Garner's interest in the property for themselves without involvement by Wnuk.

As a result, Wnuk brought this suit against Garner, Doyle, Parson, and Phillips. Wnuk claims that Doyle tortiously interfered with her written contract with Garner; that Doyle breached a verbal agreement with Wnuk for the two of them to jointly develop the property; and that via a conspiracy, Doyle, Parson, and Phillips breached another verbal agreement to develop the property through a partnership between themselves and Wnuk. Wnuk also seeks to hold Doyle liable for damages on a promissory estoppel theory.

Doyle moved for summary judgment, arguing, among other things, that any verbal agreement to which she was allegedly a party would be unenforceable for indefiniteness and violation of the Statute of Frauds. Wnuk appeals the trial court's grant of Doyle's motion. We affirm.

> To obtain summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. On appeal, this Court applies a de novo standard of review and must draw all inferences in favor of the non-moving party.[1]

The following facts, except where noted, are not disputed:

In May 2002, Garner borrowed $50,000 from Wnuk because of his inability to timely pay debts encumbering the property. Garner agreed to pay $75,000 to Wnuk in full repayment of the loan one year later. Although Doyle thought the repayment amount was "a little bit much," she did not object because the money was to be paid solely by

---

[1] *Talbot County Bd. of Commrs. v. Woodall*, 275 Ga. 281 (1) (565 SE2d 465) (2002) (punctuation and footnotes omitted).

Garner. As security for the loan, Doyle nonetheless joined with Garner in executing a security deed in favor of Wnuk for $75,000. Wnuk thereby acquired a lien on the property. Although initially the $50,000 was also going to be used to survey and subdivide the property, Doyle ended up using all of the funds to satisfy liens that had been placed on the property by Garner. One of the lienholders was Jerry Hawthorne, who was attempting to use his liens as leverage to acquire ownership of the property.

In either late 2002 or early 2003, Garner decided to sell his 50 percent interest in the property to Wnuk. Acting together, Wnuk and Doyle sought a bank loan in February 2003 so that Wnuk could acquire Garner's interest. The loan, which could have been for as much as $500,000, was also going to be used to pay whatever debts burdened the property, including loans by Hawthorne to both Doyle and Garner. Use of the bank loan to develop the property was also considered. The bank officer ordered that the property be appraised. The property was appraised at approximately $1.5 million. Wnuk and Doyle each paid half of the $750 appraisal fee. Assisting Doyle in her efforts to retain the property, Wnuk also made half of the May 2003 installment payment on a loan by Hawthorne to Doyle. According to Doyle, Hawthorne was going to foreclose on the property if this debt was not satisfied by its June 1, 2003 deadline.

On May 3, 2003, Wnuk and Garner signed a "contract for sale" of his interest in the realty to her for $304,000. The contract was contingent upon Wnuk's ability to qualify for the bank loan on or before May 13, 2003. By its terms, the contract would terminate if Wnuk did not close her purchase of the property by the May 13 deadline, unless the contract was "extended by the parties in writing." Undisputably, Wnuk was not able to close on her purchase of Garner's interest by May 13. According to Doyle, Wnuk was unable to obtain financing because, prior to May 13, Doyle learned of another tax lien on the property and of a claim to a ten percent ownership interest by Hawthorne.

Wnuk attempted to bring Parson and Phillips into the deal by introducing them to Doyle on May 19. Several days later, Doyle met with Parson and Phillips in Wnuk's absence; and Doyle, Parson, and Phillips formed a limited liability company, owned one-half by a Parson/Phillips partnership and one-half by Doyle, to purchase and develop the property. At about this time, Garner quitclaimed his interest in the property to Doyle at her request. On June 6, the limited liability company purchased the property, using a bank loan that relied on the earlier appraisal obtained by Wnuk and Doyle. Afterward, Doyle offered to repay the $75,000 to Wnuk and to reimburse her for payments she had made for the appraisal of the property and the installment on the Hawthorne loan. Wnuk, however, refused to

accept the tendered sums because her receipt of the money was conditioned upon her releasing other claims to the property.

Wnuk claims that she and Doyle verbally agreed to become partners in developing the property when they were seeking the bank loan in February 2003, and that, even though her contract with Garner was not closed by the May 13 expiration date, the parties verbally agreed to an extension. Wnuk further asserts that she, Doyle, Parson, and Phillips subsequently entered into a verbal agreement at the May 19 meeting to expand the partnership to include Parson and Phillips, so that the four of them would jointly secure a loan to develop the property and that each would own a one-fourth interest.

Doyle maintains that her only agreement was to assist Wnuk in obtaining the bank loan needed to acquire Garner's interest in the property. According to Doyle, nothing was agreed upon at the May 19 meeting because Parson and Phillips made clear that they wanted a majority interest in the property and that she was not willing to part with any of her one-half interest. Doyle maintains that she had Garner quitclaim his interest to her after the May 19 meeting because she was informed of yet another lien that was about to be placed on the property.

1. The trial court did not err in awarding summary judgment to Doyle on Wnuk's claim that Doyle tortiously interfered with Wnuk's contract with Garner.

Wnuk maintains that Doyle prevented Garner from transferring his property interest to Wnuk by having him quitclaim his interest to Doyle after the May 19 meeting. The contract, however, expired by its terms on May 13. Wnuk claims that the parties verbally agreed to an indefinite extension. But by its terms, the contract could be extended by the parties only in writing. Therefore, any verbal extension would have been ineffective.

2. Doyle was also entitled to summary judgment on Wnuk's claim that Doyle breached verbal agreements to jointly develop the property with Wnuk.

Doyle does not deny that she verbally agreed to facilitate Wnuk's purchase of Garner's interest by pursuing the bank loan. Doyle, however, disputes Wnuk's claim that she had more broadly agreed to enter into a partnership with Wnuk to develop the property even if Wnuk's purchase of Garner's interest did not materialize. Although Wnuk claims there was such an agreement — initially between her and Doyle, and then later between her, Doyle, Parson, and Phillips — in her deposition, Wnuk admitted that there was never any discussion of the amount she would have to pay for either her 50 percent partnership interest with Doyle or her 25 percent partnership interest with Doyle, Parson, and Phillips. Moreover, Wnuk acknowledged

that she would have to make some monetary contribution to the partnership above and beyond the money she had loaned to Garner. Therefore, omission of the essential term of contract consideration rendered the alleged verbal agreements too indefinite to be enforced.[2]

3. It follows that Wnuk's promissory estoppel claim against Doyle also fails, as a promise too indefinite to be enforced under a breach-of-contract theory is too indefinite to be enforced under a promissory estoppel theory.[3]

4. Because Wnuk's conspiracy claim is dependent upon the enforceability of the alleged oral partnership agreement between her, Doyle, Parson, and Phillips, Doyle was entitled to summary judgment on the conspiracy claim as well.

*Judgment affirmed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED NOVEMBER 23, 2005.

*Grant, Konvalinka & Harrison, John P. Konvalinka,* for appellant.

*Horton, Maddox & Anderson, William Horton, Michael A. Anderson, Fred T. Hanzelik,* for appellee.

Larry Garner, *pro se.*

---

[2] See *Cherokee Falls Investments v. Smith,* 213 Ga. App. 603, 604-605 (1) (445 SE2d 572) (1994).

[3] See *Jackson v. Ford,* 252 Ga. App. 304, 308 (1) (c) (555 SE2d 143) (2001).