A97A0301. SANDERS v. COMMERCIAL CASUALTY INSURANCE COMPANY.
(485 SE2d 264)

SMITH, Judge.

John Sanders, d/b/a Sanders Service Company, brought suit against Commercial Casualty Insurance Company to recover on a payment bond issued to JaTech and Associates, Inc., the general contractor on a sidewalk construction project for the City of East Point. Sanders alleged that he entered into a contract with JaTech to perform concrete work on the project and that he had not been paid in accordance with the terms of that contract. Commercial Casualty answered, denying the existence of a contract and alleging that Sanders had been paid in full. The case was tried to a jury.[1] After Sanders rested his case, Commercial Casualty moved for a directed verdict, which was granted. Judgment was entered in favor of Commercial Casualty, and Sanders appeals following the denial of his motion for new trial.

1. Sanders contends the trial court erred in directing a verdict against him on the basis that he failed to prove all elements of the contract sued upon. We agree and reverse.

Sanders testified that he entered into a written contract with M & R Company & Associates, a subcontractor on the sidewalk project, to perform certain specified work for $9,000. Sanders testified that M & R was "fired" by the general contractor, JaTech, and that he left the work site as well, believing that because he was M & R's subcontractor, he would not be allowed to work. He testified that the next day, JaTech's principal, Jimson Akinpelu, called him at home and asked him to finish the job. According to Sanders, Akinpelu told him "don't worry about [a] contract"; he told him just to submit bills for his truck and labor and "he would take care of it." Sanders worked on the project intermittently for several months and completed the

---

[1] Commercial Casualty also filed a third-party complaint against JaTech, but that is not material to this appeal.

work. He performed the work listed in his original subcontract with M & R plus additional work. He submitted the payroll and equipment records regularly, as requested by Akinpelu. His complaint as amended claimed he was entitled to payment in the amount of $69,340 for work performed, plus interest, determined by adding all the bills he submitted to JaTech for payroll and equipment. He was paid only $8,000.

Sanders called Akinpelu during his case-in-chief for purposes of cross-examination. Akinpelu's testimony differed from that of Sanders. He testified that when JaTech informed M & R it was dissatisfied with the work of another subcontractor M & R had procured to do this particular work, M & R proffered Sanders as a subcontractor to complete the work. He also testified, however, that M & R brought Sanders to him and told him Sanders "would be working . . . on their behalf." Commercial Casualty argued below and contends on appeal that this constituted an "assignment" by M & R to JaTech of its contract with Sanders, so that Sanders was working for JaTech for the amount stipulated in Sanders's written contract with M & R. Akinpelu testified that he instructed Sanders to submit payroll forms to him as the job progressed.[2]

The trial court granted Commercial Casualty's motion for directed verdict because it found that Sanders did not prove a prima facie case and that the evidence did not establish the necessary elements of the alleged oral contract between Sanders and Commercial Casualty's principal, JaTech.

"A contract is an agreement between two or more parties for the doing or not doing of some specific thing." OCGA § 13-1-1. To be enforceable, it must be set forth with "such certainty and completeness that either party may have a right of action upon it. . . . When a contract is substantially alleged, some details might be supplied under the doctrines of reasonable time or reasonable requirements. But indefiniteness in subject matter so extreme as not to present anything upon which the contract may operate in a definite manner renders the contract void." (Citations and punctuation omitted.) *Jackson v. Williams*, 209 Ga. App. 640, 642 (1) (434 SE2d 98) (1993).

Sanders's testimony set forth the elements of a contract. The contract, as alleged in Sanders's testimony, is not so indefinite or uncertain that it is unenforceable. He testified that he agreed with JaTech, in the person of Akinpelu, that he should complete the concrete work on certain streets in the East Point sidewalk project, and that he would submit bills for his equipment and labor, which would

---

[2] Akinpelu testified, however, that Sanders did not submit them until they were again requested and he gave Sanders the proper forms.

be paid by JaTech. Because such a contract is not within the Statute of Frauds, the fact that it was an oral contract did not make it unenforceable. OCGA § 13-5-30.

The law does not favor destroying contracts on the basis of uncertainty, and a contract that may originally have been indefinite may later acquire more precision and become enforceable because of the subsequent words or actions of the parties. Because the determination of whether a contract contains the requisite certainty must be made at the time enforcement is sought, an objection of indefiniteness may be obviated by performance on the part of one party and the acceptance of the performance by the other. *Steinemann v. Vaughn & Co.*, 169 Ga. App. 573, 577 (313 SE2d 701) (1984).

Sanders may have been somewhat inarticulate in explaining the terms of the contract, and inconsistencies may have existed between his deposition testimony and his trial testimony regarding the rates he charged for his workers. These matters, however, go only to the credibility of his testimony. His demand for payment under the contract was explicit: he alleged that the agreement was that he was to be paid according to the bills he submitted. Those bills were admitted into evidence. The scope of the contract was not in dispute, and Sanders's work was accepted. This was sufficient to establish a prima facie case.

Of course, Sanders's testimony was in conflict with that of Akinpelu. But here, as in *Steinemann*, that conflict does not reveal a problem with uncertainty or failure to establish a contract; but instead, it presents material issues of fact that required resolution by the jury. When a motion for directed verdict is made, the issue to be determined is whether the evidence introduced, with all reasonable inferences from that evidence, demands a verdict for the movant. A directed verdict may be granted only when, without weighing the evidence, only one reasonable conclusion emerges as to the proper judgment. When the evidence is in conflict, or when insufficient evidence is presented to *demand* a judgment for the movant, a directed verdict is improper. *Jackson*, supra at 642 (1). A jury must resolve the issues of whether a separate contract existed between Sanders and JaTech or whether instead M & R assigned its contract with Sanders to JaTech so that Sanders was performing on that contract. The trial court erred in granting a directed verdict in favor of Commercial Casualty.

2. Because this case must be retried, we consider Sanders's contentions that the trial court also erred in ruling that Sanders would not be entitled to recover on a theory of account stated and in refusing to allow the jury to consider a theory of recovery based upon quantum meruit even in the absence of a contract. Of course, should the jury decide that Sanders was working under an oral contract

with JaTech, it would not consider these theories. But should the jury decide that neither Sanders's contract with M & R nor his alleged contract with JaTech was enforceable, Sanders would be entitled to have the jury consider both alternative theories.

(a) If the jury concludes that neither contract existed, it could consider whether the work Sanders performed established an account between the parties and whether, when JaTech accepted Sanders's billings, the open account became an account stated. Sanders's claim was for "an obligation for the payment of money arising out of a transaction to . . . furnish . . . goods or services other than a 'retail installment transaction,'" and as such was a "commercial account." OCGA § 7-4-16. "'An account stated is an agreement by which persons who have had previous transactions with each other fix the amount due in respect to such transactions and the one indebted promises payment of the balance. (Cits.)'" *Kay Solar Systems v. Rome Printing Co.*, 160 Ga. App. 825, 826 (1) (287 SE2d 675) (1982).

An open account may become an account stated even without an express agreement if the account is rendered to the debtor and the debtor fails to object to it. Id. In such case, "a jury 'might be authorized to infer that the failure of the party to raise [an] objection was an implied agreement on his part that the account was correct'; but this inference is not demanded as a matter of law. [Cit.]" *Lawson v. Dixie Feed &c. Co.*, 112 Ga. App. 562, 564 (2) (145 SE2d 820) (1965). In this case, the jury could consider whether Sanders turned in billings to JaTech periodically and whether Akinpelu's failure to object to these accounts established an implied promise to pay the account.

(b) If the jury concludes that recovery may not be premised upon any other theory advanced, it may consider quantum meruit. Quantum meruit applies when as a matter of fact no contract exists, and a benefit has been conferred upon the party sought to be charged by the party contending an unjust enrichment. *Ga. Tile Distrib. v. Zumpano Enterprises*, 205 Ga. App. 487, 488 (1) (422 SE2d 906) (1992). OCGA § 9-2-7 provides in pertinent part that "[o]rdinarily, when one renders service . . . which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof." Even if neither the oral contract alleged by Sanders nor the written contract with M & R alleged by Commercial Casualty governed the transaction here and no account existed, JaTech was conferred a benefit by Sanders. Sanders would be entitled to reasonable compensation for the work he performed.

*Judgment reversed. McMurray, P. J., and Beasley, J., concur.*

DECIDED APRIL 8, 1997.

 Before Judge Cook.

*Levy & Adams, D. Merrill Adams,* for appellant.

*Thompson & Slagle, Dewitte Thompson, Jr., Jefferson B. Slagle,* for appellee.