A09A0336. A & B BLIND & DRAPERY COMPANY, INC. et al.
v. B & B GLASS AND STOREFRONTS, INC.
(679 SE2d 782)

MIKELL, Judge.

This is an appeal from a judgment entered after a bench trial in favor of B & B Glass and Storefronts, Inc. ("Seller"), on its complaint on a promissory note against A & B Blind & Drapery Company, Inc. ("Purchaser"), and its president, Jesse M. Chastain, Jr. Purchaser bought Seller's business but claimed that Seller misrepresented its accounts payable and receivable. Purchaser sought to set off certain sums against the amount due under the note and counterclaimed for breach of contract, among other things. The trial court partially granted Purchaser's set-off claim and entered judgment in the principal amount of $107,202.66, plus $25,144.88 in pre-judgment interest and $13,259.75 in attorney fees. The trial court denied Purchaser's motion for a new trial. Purchaser appeals both orders. We affirm for the reasons set forth below.

The record shows that on July 2, 2004, the parties entered into an Asset Purchase Agreement ("Agreement") whereby Purchaser bought the assets of Seller's business for $347,107, including $150,000 in cash and a promissory note for $197,107. A statement of assets and accounts receivable and payable is attached to the Agreement. Several provisions of the Agreement are relevant to the parties' dispute. Paragraph 9 states in pertinent part that Purchaser does not assume any debts or obligations of Seller or its Principals, Richard Ross Beaver and Joe Bowden; that Seller and/or Principals have 30 days to satisfy outstanding debts upon notice of same; and that

> Purchaser shall have the specific right to set-off against any monies due to Seller under the terms of the Promissory Note the amount . . . which Purchaser may be required to pay directly for any such debts, obligations or liabilities of Seller or of the Principals . . . , upon submission of written evidence of such payment and/or costs to Seller.

In Paragraph 10, Seller and Principals warranted, inter alia, that its financial statements were true, accurate, and complete and that the accounts receivable were collectible within 90 days. Purchaser retained the right to set off any uncollectible receivables against payment due under the note. Finally, Paragraph 24 states that in the event of a breach of any provision, "the other party shall have the right to invoke any remedy allowed at law or in equity; reference to any particular remedy shall not preclude the exercise of any other remedies, all of which being cumulative."

On August 25, 2004, Purchaser executed a replacement promissory note in the amount of $137,000 "to reflect a reduction in the purchase price . . . of the business . . . as a result of an increase in Seller obligations not previously known on July 2, 2004." The first payment was due on January 1, 2006, with payment due in full by December 1, 2008. The note provided for acceleration upon default, as well as costs of collection, including attorney fees. Purchaser retained the right of setoff under the Agreement.

Purchaser made no payments on the note, and on May 5, 2006, Seller filed suit against Purchaser and Chastain, who guaranteed the note, to recover the $137,000 principal, plus interest and attorney fees. In their answers, Purchasers asserted in part, the right to set off undisclosed debts or uncollectible accounts receivable. Purchasers also counterclaimed against Seller and its Principals. In Count 1, Purchasers asserted that the Seller and Principals breached the warranties in the Agreement by providing false financial statements and that the breach caused damages in excess of the amount due under the note. Purchasers also asserted counts of fraud and negligent misrepresentation and sought to recover attorney fees, abusive litigation damages, and punitive damages.

The parties agreed to a bench trial. Following the trial, the court entered an order on December 31, 2007, containing findings of fact. Specifically, the court determined that Purchaser was entitled to "a net reduction of $29,797.34," after setting off certain receivables and costs of collection. The court also found that setoffs were Purchaser's sole remedy under the Agreement and that Purchaser was not entitled to any additional adjustment in the purchase price of the business. The court further found that Purchaser had failed to establish any intent to defraud by Seller and that Purchaser failed to prove its claim of breach of warranty to operate the business as a going concern. Accordingly, the court reduced the principal amount due on the note, $137,000, by $29,797.34, and entered judgment for Seller in the amount of $107,202.66, plus pre-judgment interest of $25,144.88, and attorney fees of $13,259.75.

Purchaser filed a motion for new trial, arguing, inter alia, that the trial court erred in concluding that the right of set-off was

212

Purchaser's sole remedy for breach of the Agreement because, pursuant to Paragraph 24, Purchaser was entitled to pursue "any remedy allowed at law or in equity." After a hearing on Purchaser's motion, the trial court issued an order on July 23, 2008, clarifying its judgment. The court found that the Agreement contemplated the possibility that some of the reported receivables were not collectible or that payables were not reported; that the only remedy set forth therein was a dollar-for-dollar adjustment to the promissory note, which, in effect, was an adjustment to the purchase price; that Purchaser was not entitled to a further downward adjustment because Chastain failed to exercise due diligence to discover the discrepancies in payables and receivables; and that the remedy in the contract was an adequate remedy at law. The trial court thus denied the motion for new trial. Purchaser appeals from these orders.

1. Purchaser contends that the trial court incorrectly interpreted the Agreement as limiting its remedy to set-offs. We disagree. At the hearing on the motion for new trial, the trial court explained that while its use of the word "sole" may have been misleading, it was not the court's intention to say that set-off was the only remedy that Purchaser could pursue. The court explained that based on the fact that when entering the Agreement, both sides

> contemplated that the [Seller's] representations . . . as to the payables and receivables might not be completely accurate and . . . there would be this adjustment for the set-offs and the fact that there were continued negotiations by the parties and agreements made after the original [Agreement], coupled with the evidence that was presented concerning [Chastain's] level of sophistication in buying and selling businesses and [Seller's principals'] lack of sophistication in operating such a business, I took all that into account.

Purchasers essentially argue that the trial court erred in rejecting their counterclaim for breach of contract damages incurred as a result of misrepresented payables and receivables. Chastain testified payables were understated by $96,000 and receivables were overstated by $33,275. According to Chastain, he decided to buy the business for $347,100, including real property, on the approximately $94,000 in annual net income as represented by Seller, utilizing a standard multiplier of 3.5;[1] that based on the adjustment to the

---

[1] Chastain's accountant testified that a multiplier of between three and three and a half times earnings is reasonable and customary.

financials, net income had to be revised to $42,941; and that applying this formula, the business was worth only $150,295. Hence, Purchaser argues that the court failed to consider Chastain's testimony concerning the adverse effect of the misrepresented financials on the net income of the business and the exponential effect that the lower net income had on its value, and, ultimately, the purchase price. We disagree.

> [A] trial court's findings of fact in a bench trial are reviewed under a clearly erroneous standard. Such a standard gives the proper deference to the trial court, which is in the best position to judge the credibility of witnesses. We will not disturb the trial court's findings if there is any evidence to support them, and we view the evidence in the light most favorable to support the trial court's verdict.[2]

The trial court specifically found that Purchaser and Chastain were not entitled to additional damages to remedy the diminution in value of the business caused by the discrepancies in the payables and receivables because they failed to show that Chastain exercised due diligence to discover those discrepancies. The evidence supports this finding. The transcript reveals that Chastain was an experienced accountant and comptroller and had purchased five businesses in the thirteen years before trial. Chastain testified that he did not spend much time reviewing Seller's records, although he knew that Seller did not have a general ledger or a computer system.

Finally, the trial court heard extensive evidence regarding the accounts payable and receivable before awarding Purchaser a set-off of $29,797.34. The trial court expressly rejected all other remaining counterclaims: breach of warranty to operate the business as a going concern, fraud, and misrepresentation. Accordingly, it is clear that the trial court rejected Purchaser's counterclaim for additional damages other than set-off based on the evidence presented at trial, and not on an incorrect interpretation of the Agreement. For these reasons, we find no merit in Purchaser's first enumeration of error.

2. Purchaser argues that there is no evidence to support the award of attorney fees under OCGA § 13-6-11. This statute applies where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. In this case, however, the trial court did not award fees under OCGA § 13-6-11. The trial court awarded fees because the promis-

---

[2] (Footnotes omitted.) *Cox Interior v. Bayland Properties*, 293 Ga. App. 612, 613 (1) (667 SE2d 452) (2008).

sory note specified that they were recoverable.[3] Therefore, this argument fails.

3. Purchaser contends that the amount of attorney fees awarded by the trial court exceeds the permissible bounds of OCGA § 13-1-11. We disagree. The promissory note provided that Purchaser shall pay all costs of collection, including "reasonable" attorney fees. Under OCGA § 13-1-11 (a) (2), if a promissory note

> provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note . . . and 10 percent of the amount of principal and interest owing thereon in excess of $500.00.

The interest rate on the note was seven percent, which Purchaser fails to take into account in this enumeration of error. The judgment of $107,202.66 plus pre-judgment interest of $25,144.88 totals $132,347.54. The court awarded attorney fees of $13,259.75, which is fifteen percent of $500 plus ten percent of $131,847.54. The trial court did not err in its calculation of attorney fees.[4]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED JUNE 3, 2009.

*David A. Anton*, for appellants.
*Bannister & Black, Charles C. Black*, for appellee.

---

[3] See OCGA § 13-1-11 (a) (2).

[4] Compare *Long v. Hogan*, 289 Ga. App. 347, 348-349 (2) (656 SE2d 868) (2008) (court erred in awarding $10,195.40 in attorney fees under OCGA § 13-1-11 where principal and interest amounted to only $6,259.12). For correct calculation by appellate court, see *Ahmad v. Excell Petroleum*, 276 Ga. App. 167, 170 (5) (623 SE2d 6) (2005).