**FIRST DIVISION
PHIPPS, C. J.,
ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**March 30, 2015**

# In the Court of Appeals of Georgia

A14A1771. CHEELEY INVESTMENTS, L.P. et al. v. ZAMBETTI.   91-072

ELLINGTON, Presiding Judge.

Cheeley Investments, L.P., Edward Breedlove, and SMC Properties, L.P. (collectively "Cheeley Investments"), brought this action in the Superior Court of Forsyth County against John Zambetti, seeking damages for breach of contract or, in the alternative, promissory estoppel. After a hearing, the trial court granted Zambetti's two motions for summary judgment. Cheeley Investments appeals, and, for the reasons explained below, we reverse.

Under OCGA § 9-11-56 (c), a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[.]"

On appeal from the grant of summary judgment, we construe the evidence most favorably towards the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences. The party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact. Our review of the grant or denial of a motion for summary judgment is de novo.

(Citations and punctuation omitted.) *Johnson v. Omondi*, 294 Ga. 74, 75-76 (751 SE2d 288) (2013).

Viewed in the light most favorable to Cheeley Investments, as the non-movant, the evidence showed the following. JR Real Estate Development, LLC ("JRD") entered into an agreement to buy a certain tract of land in Gwinnett County from Cheeley Investments, L.P., a trust designated as the "SMC Family Trust U/A Dated May 18, 1998," and Genevieve Breedlove (the wife of the appellant, Edward Breedlove). Zambetti executed the agreement as the manager of JRD, and Robert Cheeley executed the agreement on behalf of Cheeley Investments, L.P. and as trustee of the family trust. The agreement became binding by its express terms on May 12, 2008.

The agreement provided several options for closing dates, the last being September 30, 2008. On that date, however, the parties executed an amendment to the

2

agreement, waiving the escrow closing requirement and extending the closing date to November 14, 2008; JRD agreed to wire additional earnest money to the holder of the escrow funds. JRD was unable to close on November 14, 2008. The parties discussed a possible reinstatement and extension of the expired agreement, but were unable to reach an agreement. On December 4, 2008, JRD filed in Gwinnett County an action for declaratory judgment, against Cheeley Investments, L.P., SMC Properties, L.P., and Genevieve Breedlove.

Cheeley deposed[1] that, after learning about the declaratory judgment action, he called Zambetti that day and asked him why he was filing a lawsuit about the disbursement of the escrow funds, given that the parties were still trying to close the land deal. Cheeley testified that Zambetti told him that his (Zambetti's) attorneys had advised him to file the lawsuit "in order to buy him some more time." According to Cheeley, Zambetti told him that he had the money needed to close, and still planned to close, and said that he did not know why his attorneys believed it was necessary to file the lawsuit. Cheeley deposed that Zambetti said, "I will pay your attorneys' fees" because Cheeley and Breedlove had been "honorable men" and held up their end of the bargain, and he "was not faulting [them] in any way." Cheeley deposed that

---

[1] Cheeley also tendered an affidavit consistent with his deposition.

3

he accepted Zambetti's offer. That same day, Cheeley wrote an email to the escrow attorney, saying that he had spoken with Zambetti, who had apologized for JRD's lawsuit, and he relayed Zambetti's statement they were trying to buy some time to close the land deal and they would "cover our $," referring to Cheeley Investments' legal expenses from the lawsuit.

In addition, Cheeley testified that Zambetti reiterated the promise to him twice, including at a meeting on December 19, 2008, in the presence of Edward Breedlove and several others. In addition, Breedlove deposed that he heard Zambetti say at that meeting that he was buying time to get the land deal closed and that he would pay whatever legal fees Cheeley Investments incurred.[2]

1. Cheeley Investments contends that the trial court erred in concluding that the alleged oral agreement was unenforceable, specifically in that it was too uncertain as to the price term, and in granting on this basis Zambetti's motion for summary judgment on Cheeley Investments' breach of contract claim.

In this case, the record contains evidence that Zambetti admitted to Robert Cheeley that JRD filed its declaratory judgment action merely as a delaying tactic, to

---

[2] We note that, in moving for summary judgment, Zambetti does not identify as disputed the question whether he offered to pay Cheeley Investments' legal expenses.

buy time and delay disbursement of the escrowed funds in the hopes of salvaging the Gwinnett land deal involving Cheeley Investments L.P. and the other sellers. The record also contains evidence that Zambetti promised to pay the litigation expenses including attorney fees incurred by Cheeley Investments in responding to the action. Generally, contracts concerning the payment of attorney fees and expenses of litigation are enforceable. See *Sylar v. Hodges*, 250 Ga. App. 42, 43-44 (550 SE2d 438) (2001) ("Parties may establish contract terms on any subject matter in which they have an interest so long as their agreement is not prohibited by statute or public policy. There is no public policy against contracting for the recovery of attorney fees.") (footnotes omitted); *Hope & Assocs., Inc. v. Marvin M. Black Co.*, 205 Ga. App. 561 (1) (422 SE2d 918) (1992) (accord).[3] In addition, there is evidence that, on

---

[3] Under Georgia law, "simple contracts," those not otherwise defined in OCGA §§ 13-1-2 through 13-1-4, "may either be in writing or rest only in words as remembered by witnesses." OCGA § 13-1-5. See OCGA § 13-1-6 ("Parol contracts shall include only contracts in words as remembered by witnesses."). Agreements for the payment of another party's attorney fees and expenses of litigation are not among the seven specific types of contracts that are subject to the Statute of Frauds as provided in OCGA § 13-5-30. Moreover, Cheeley's email to his company's real estate attorney is a writing that corroborates Zambetti's verbal offer and reflects the general terms and the bargained for consideration. *Jones v. White*, 311 Ga. App. 822, 826-827 (1) (a) (717 SE2d 322) (2011) (An unexecuted written agreement drafted by one party and an e-mail by the other party to his attorney regarding the agreement were writings that corroborated testimony regarding an oral agreement to split consulting fees.).

behalf of Cheeley Investments, Robert Cheeley accepted Zambetti's promise and that the promise accomplished Zambetti's purpose in making it, that is, Cheeley Investments continued to negotiate the land deal despite JRD's failure to close by the extended deadline. Thus, there is evidence from which a jury could find that Zambetti's oral promise to pay Cheeley's Investments' legal expenses was supported by consideration. *Evans v. Merrill Lynch Business Fin. Svcs.*, 213 Ga. App. 808, 810 (3) (446 SE2d 215) (1994) (A lender's agreement to forbear enforcement of its rights under a guaranty was sufficient consideration for a new financing agreement by the guarantor for repayment of the borrower's debt.); *Mann Electric Co. v. Webco Southern Corp.*, 194 Ga. App. 541, 542 (2) (390 SE2d 905) (1990) (Evidence presented a question of fact regarding consideration, where there was evidence that a general contractor was in material breach of a construction subcontract so as to excuse a subcontractor from further performance, as well as evidence that the subcontractor forbore exercising its remedies and elected to complete its performance in reliance upon the owner's promise to pay the general contractor and the subcontractor jointly.).[4]

---

[4] See OCGA § 13-3-42 (a), (c) (2) (Under Georgia law, "[a] forbearance" may be "a performance" that is sufficient to constitute consideration supporting a contract.); *Mann Electric Co. v. Webco Southern Corp.*, 194 Ga. App. at 543 (2)

6

With regard to the lack of "definiteness" as to "the price term," we are guided by the general principle that Georgia law leans against destroying contracts on the basis of uncertainty. *Triple Eagle Assocs. v. PBK, Inc.*, 307 Ga. App. 17, 20 (2) (704 SE2d 189) (2010); *Sanders v. Commercial Cas. Ins. Co.*, 226 Ga. App. 119, 121 (1) (485 SE2d 264) (1997); John K. Larkins, Jr., *Ga. Contracts: Law and Litigation*, § 5:1 (2d ed., updated September 2014). Moreover, the determination whether a contract contains the requisite certainty is made at the time enforcement is sought. *Arrow Exterminators, Inc. v. Gates Condominium Homeowners Assn.*, 294 Ga. App. 620, 622 (1) (669 SE2d 421) (2008); *Sanders v. Commercial Cas. Ins. Co.*, 226 Ga. App. at 121 (1). Our courts routinely enforce contractual provisions for attorney fees and expenses of litigation even when, at the time of the agreement, the triggering event (such as a legal proceeding to collect a debt by a creditor or the arbitration of a dispute arising out of a contract) has not and may never occur and where the agreed upon "price term" is no more definite than "reasonable attorney fees and expenses of

_____

("Any benefit accruing to him who makes the promise, or any loss, trouble, or disadvantage undergone by, or charge imposed upon, him to whom it is made, is sufficient consideration to sustain a contract. Damage or trouble to the promisee, as well as benefit to the promisor, is a sufficient consideration to support a promise.") (citations, punctuation, and emphasis omitted).

litigation."[5] In this case, there is evidence from which a jury could find that Zambetti

[5] See *Magnetic Resonance Plus, Inc. v. Imaging Systems Intl.*, 273 Ga. 525, 526-527 (1), (2) (543 SE2d 32) (2001) (A service contract for the maintenance of medical equipment that provided that the prevailing party in litigation arising from the contract would be entitled to recover "reasonable" attorney fees was enforceable according to the usual rules of contract interpretation.); *Sylar v. Hodges*, 250 Ga. App. at 43-44 (A contract to buy a tract of real property that provided that, in the event the agreement was enforced through an attorney, the defaulting party would be liable for the attorney fees and expenses of litigation of the non-defaulting party was enforceable according to its terms. The non-defaulting party was not required to show bad faith by the defaulting party.); *Discovery Point Franchising, Inc. v. Miller*, 234 Ga. App. 68, 73-74 (5) (505 SE2d 822) (1998) (A franchise agreement that provided that, in the event of a dispute, the prevailing party would be entitled to recover reasonable attorney fees and court costs from the other party was enforceable according to its terms.); see also OCGA § 13-1-11 (A contractual obligation to pay attorney fees in connection with the collection of a promissory note "shall be valid and enforceable and collectable as a part of such debt if the note is collected by or through an attorney after maturity[.]" If the note provides for attorney fees in a specific fraction of the principal and interest owing thereon up to 15 percent, such provision and obligation shall be valid and enforceable. If the note provides for "reasonable" attorney fees without specifying any specific fraction, a statutory formula applies.); *TermNet Merchant Svcs., Inc. v. Phillips*, 277 Ga. 342, 344-345 (1) (588 SE2d 745) (2003) (Where a lender unquestionably satisfies all of the requirements of OCGA § 13-1-11, which authorizes an award of attorney fees incurred in the collection of a promissory note, the lender is entitled to receive statutory attorney fees, and the trial court is without discretion to deny fees under the statute.); *A & B Blind & Drapery Co. v. B & B Glass & Storefronts, Inc.*, 298 Ga. App. 210, 214 (3) (679 SE2d 782) (2009) (A promissory note that provided that, in the event the note was collected through an attorney, the borrower would pay all costs of collection, including "reasonable" attorney fees was enforceable, and an award of attorney fees according to the applicable statutory formula was a reasonable fee.); see generally John K. Larkins, Jr., *Ga. Contracts: Law and Litigation*, § 12:31 (2d ed., updated September 2014); Lewis N. Jones, *Ga. Legal Collections*, § 3:20 (2d ed., updated June 2014).

promised to pay the attorney fees and other expenses that Cheeley Investments would ultimately incur in responding to the declaratory judgment action, as discussed above, and that exact amount is susceptible of proof at the time of enforcement. *Jones v. White*, 311 Ga. App. at 827 (1) (a) (A mutual promise that a golf course developer would split consulting fees equally among several consultants was specific enough to be definitely and objectively ascertainable so as to form the basis of a contract.).[6] To the extent the trial court was concerned that the agreement provided no cap on the obligation Zambetti undertook, the subject agreement, like contracts generally, is subject to the implied term of the duty of good faith and fair dealing. See John K. Larkins, Jr., *Ga. Contracts: Law and Litigation*, § 5:6 (2d ed., updated September 2014). Moreover, a jury could find that, although Zambetti may have expected the legal expenses to be less than Cheeley Investments ultimately demanded, Zambetti could have capped the legal expenses by having JRD close on the land deal and dismiss its declaratory judgment action. For these reasons, the trial court erred in

---

[6] See *Sanders v. Commercial Cas. Ins. Co.*, 226 Ga. App. at 120 (1) (Although indefiniteness in the subject matter of a contract that is so extreme as not to present anything upon which the contract may operate in a definite manner renders the contract void, "[w]hen a contract is substantially alleged, some details might be supplied under the doctrines of reasonable time or reasonable requirements.") (citations and punctuation omitted).

granting Zambetti's motion for summary judgment on Cheeley Investments' breach of contract claim.

2. Cheeley Investments contends that genuine issues of material fact remain regarding whether Zambetti's promise was communicated with sufficient particularity to be enforced under the doctrine of promissory estoppel and that the trial court therefore erred in granting summary judgment in favor of Zambetti on Cheeley Investments' promissory estoppel claim.

Even when a promise is unenforceable as a contract, a promisee may recover under a theory of promissory estoppel because "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." OCGA § 13-3-44 (a).[7] Although "[p]romissory estoppel does not apply to vague, indefinite promises[,]" a trier of fact could conclude that Zambetti's promise to pay Cheeley Investments' attorney fees

---

[7] See *Ambrose v. Sheppard*, 241 Ga. App. 835, 837 (528 SE2d 282) (2000) (To survive summary judgment on a claim of promissory estoppel, the plaintiff is required to present evidence from which the jury could infer that (1) the defendant made a promise; (2) the defendant expected the plaintiff to rely on that promise; (3) the plaintiff did, in fact, rely upon it; and (4) injustice may be avoided only by enforcing the defendant's promise.).

and legal expenses in responding to JRD's declaratory judgment action was sufficiently definite to be enforced, as discussed in Division 1, supra. (Citations and punctuation omitted.) *Jones v. White*, 311 Ga. App. at 830 (1) (b) (In light of a consultant's testimony that a golf course developer promised to pay the consultant 10 percent of the net developer's fee if a bid was successful, and an email sent by an agent of the developer to the company's attorney instructing the attorney to draft an agreement reflecting that the consultant would receive such a share of the developer's fee, a trier of fact could conclude that the developer made the promise and the amount was sufficiently definite to be enforced under the doctrine of promissory estoppel.). In this case, there is some evidence that Cheeley Investments relied on Zambetti's promise and continued negotiating the land deal, all the while incurring legal expenses and losing the value of obtaining the return of the escrowed funds and the opportunity to seek another buyer. Whether the promise acted as a catalyst that induced Cheeley Investments to incur legal expenses, and whether such reliance was reasonable under the circumstances, are questions for the jury. *Brown v. Rader*, 299 Ga. App. 606, 611-612 (2) (a) (683 SE2d 16) (2009); *Folks, Inc. v. Dobbs*, 181 Ga. App. 311, 313-314 (2) (352 SE2d 212) (1986). See *Ambrose v. Sheppard*, 241 Ga. App. 835, 837 (528 SE2d 282) (2000) ("Questions of reasonable reliance are usually

11

for the jury to resolve.") (citation omitted). For these reasons, the trial court erred in granting Zambetti's motion for summary judgment on Cheeley Investments' promissory estoppel claim.

3. Zambetti contends that Cheeley Investments' claims are precluded under the doctrines of res judicata and collateral estoppel and that the trial court's summary judgment order must therefore be affirmed because the ruling is "right for any reason."[8]

First, Zambetti's invocation of the right-for-any-reason rule is misplaced. In this case, the trial court *did* expressly rule on Zambetti's argument that Cheeley Investments' claims against him are barred by the doctrines of res judicata and collateral estoppel – and rejected it.

Furthermore, as the trial court correctly concluded, the record shows that, when the defendants in JRD's earlier action (Cheeley Investments, L.P., SMC Properties, L.P., and Genevieve Breedlove) sought to add Zambetti as a party to that action,

---

[8] See *Abellera v. Williamson*, 274 Ga. 324, 326 (2) (553 SE2d 806) (2001) (Under Georgia law, "a grant of summary judgment is to be affirmed if it is right for any reason[.]" In an appellate court's de novo review, it should determine whether the trial court's grant of judgment was warranted for any reason, including for an alternate ground asserted in the summary judgment motion that the trial court chose not to address in granting summary judgment.) (punctuation and footnote omitted).

Zambetti opposed his joinder and the trial court ruled in his favor. Because Zambetti personally was not a party to the earlier litigation, identity of parties is absent, and the issue of his personal and contractual liability for Cheeley Investments' legal expenses has not been previously litigated and determined.[9] Accordingly, this argument presents no basis for affirming the trial court's summary judgment order. *A. R. Hudson Realty, Inc. v. Hood*, 151 Ga. App. 778, 780 (1) (262 SE2d 189) (1979), disapproved of on other grounds, *Merrill Lynch, &c. v. Zimmerman*, 248 Ga. 580 (285 SE2d 181) (1981).

---

[9] The doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical or their privies in identical causes of action. Three prerequisites must be satisfied before res judicata applies – (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction. . . . [T]he related doctrine of collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim – so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim.

(Citation and punctuation omitted.) *Body of Christ Overcoming Church of God, Inc. v. Brinson*, 287 Ga. 485, 486 (696 SE2d 667) (2010). See OCGA § 9-12-40.

13

*Judgment reversed. Phipps, C. J., concurs. McMillian, J., concurs in judgment only as to Division 3, and fully in all other divisions.*