**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 31, 2017**

# In the Court of Appeals of Georgia

A17A1052. ZAMBETTI v. CHEELEY INVESTMENTS, L.P., et al.

BRANCH, Judge.

In an earlier appearance of this case in this Court, we reversed the grant of summary judgment in favor of John Zambetti in this suit concerning an oral agreement by Zambetti to pay the attorney fees of his legal adversaries. See *Cheeley Investments, L.P. v. Zambetti*, 332 Ga. App. 115 (770 SE2d 350) (2015). Following the remittitur, the case was tried, and a jury returned a verdict in favor of Cheeley Investments, L.P. and others. Zambetti appeals and argues that the trial court erred by failing to instruct the jury on three legal concepts, including the Statute of Frauds. He also contends that the trial court erred by denying his motion for a directed verdict. For the reasons that follow, we affirm.

> On appeal from the denial of a motion for a directed verdict or for j.n.o.v., we construe the evidence in the light most favorable to the party opposing the motion, and the standard of review is whether there is any evidence to support the jury's verdict.

*Park v. Nichols*, 307 Ga. App. 841, 845 (2) (706 SE2d 698) (2011) (citation and punctuation omitted).

The evidence presented at trial was similar to the evidence outlined in the earlier appeal. In 2008, JR Real Estate Development, LLC ("JRD") negotiated and entered into a "Land Purchase and Sale Agreement" to buy a tract of land in Gwinnett County from Cheeley Investments, L.P. and others.[1] The agreement included a requirement that JRD provide $900,000 in earnest money (nonrefundable upon the default of the buyer) to secure a right to buy the property as well as to protect Cheeley Investments given that JRD was asking Cheeley Investments to give up the multifamily zoning that was on the property at the time, which had value, and to allow JRD to rezone the property as commercial. Zambetti negotiated and executed the agreement on behalf of JRD, and Robert Cheeley negotiated and executed the agreement on behalf of Cheeley Investments.

---

[1] For the purpose of this appeal, "Cheeley Investments" shall refer to Cheeley Investments, L.P., Edward Breedlove, and SMC Properties, L.P.

2

On November 14, 2008, the final extended closing date, JRD failed to close. Cheeley Investments continued efforts with JRD to close thereafter, but on December 4, 2008, JRD filed suit against Cheeley Investments in Gwinnett County, seeking, among other things, specific performance of the agreement, a declaratory judgment stating that Cheeley Investments was not entitled to the escrow funds, and interpleader of the escrow funds. That same day, Cheeley called Zambetti to ask why he had filed the lawsuit. During the call, Zambetti told Cheeley that the lawsuit was designed to "buy [JRD] some time," and, Zambetti added, he "would pay [Cheeley Investments'] attorneys' fees and costs." Zambetti said, "you and Ed Breedlove have been honorable men, you haven't done anything wrong. And my attorneys told me I needed to do this in order to buy me some time." Zambetti asked Cheeley to "be patient and . . . we would get the thing closed." Cheeley accepted Zambetti's proposal. Later that day, Cheeley relayed the substance of the conversation to a colleague in an email: "[Zambetti] apologized for the lawsuit and said he would cover our $." On December 19, 2008, Zambetti reiterated the promise in the presence of witnesses including Edward Breedlove, whose wife was a partial owner of the property. According to Breedlove, Zambetti said "I'll pay you, I'll pay your expenses,

3

attorneys' fees, whatever." Zambetti also boasted that he could get a "suitcase full of cash" to close the deal, which reassured Cheeley that Zambetti still intended to close.

Cheeley testified that because of Zambetti's promise to pay Cheeley Investments' attorney fees, he was willing to continue to negotiate with JRD for the sale of the property despite the lawsuit. Negotiations between Cheeley Investments and JRD continued thereafter. At the same time, Cheeley Investments continued to incur legal fees defending the declaratory judgment action filed by JRD. Ultimately, however, JRD never closed on the land sale agreement. And on February 4, 2009, in the Gwinnett action, Cheeley Investments filed an answer, a counterclaim against JRD for attorney fees and expenses arising from the land sale agreement, and a third-party complaint against Zambetti, personally, for attorney fees and expenses based on the oral promise. On June 4, 2009, however, the Gwinnett court dismissed Cheeley Investments' attempt to add Zambetti as a third party defendant.

Over three years passed until, on November 14, 2012, Cheeley Investments filed the present suit against Zambetti in Forsyth County Superior Court for breach of contract and promissory estoppel.[2] At about the same time, the Gwinnett County

---

[2] As we noted in the earlier appeal of this case, Cheeley Investments' claims against Zambetti in the present action are not barred by the doctrines of res judicata and collateral estoppel arising from Cheeley Investments' unsuccessful attempt to bring a third party claim against Zambetti in the Gwinnett action. See *Cheeley Investments*, 332 Ga. App. at 120-121 (3).

action went to trial, and a jury returned a verdict in favor of Cheeley Investments and against JRD that included awarding Cheeley Investments the $900,000 in escrow funds as well as $334,198.21 in attorney fees and expenses for bad faith, stubborn litigiousness, or causing unnecessary trouble and expense; as of the time of trial in the present action, JRD had not paid those fees and expenses to Cheeley Investments. Later, in the present suit in Forsyth County, the trial court granted Zambetti's motions for summary judgment, which this Court reversed in *Cheeley Investments v. Zambetti*, 332 Ga. App. 115. The Forsyth action eventually went to trial, the trial court denied Zambetti's motion for a directed verdict, and the jury agreed that Zambetti personally had entered into an oral contract and breached it and that he was liable in promissory estoppel as well, based on the same promise. The jury awarded Cheeley Investments all of the attorney fees and expenses it incurred in the Gwinnett County action, as well as an additional award of $170,753.11 in expenses of litigation under OCGA § 13-6-11,[3] for a total of $522,294.96.[4]

---

[3] OCGA § 13-6-11 provides: "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them."

[4] Thus, the facts of this case involve two attorney fee awards: the fees assessed against JRD in the Gwinnett action and the fees assessed against Zambetti in the Forsyth action.

1. Zambetti contends the trial court erred by failing to charge the jury (1) that an oral promise to answer for the debt or default of another must be in writing, i.e., a Statute of Frauds defense; (2) that a corporation is a separate legal entity that insulates its representatives from personal liability; and (3) that promissory estoppel requires evidence of "forbearance as consideration," reasonable reliance, and due diligence. Cheeley Investments counters that court's charge was proper and that the charges about which Zambetti complains either were inapplicable to the case presented to the jury, were waived, were precluded by the law of the case from the earlier opinion in *Cheeley Investments v. Zambetti*, or were not adjusted to the facts presented at trial.

"A trial court has a duty to charge the jury on the law applicable to issues which are supported by the evidence. If there is even slight evidence on a specific issue, it is not error for the court to charge the jury on the law related to that issue." *Jones v. Sperau*, 275 Ga. 213, 214 (2) (563 SE2d 863) (2002). "Whether the evidence presented is sufficient to authorize the giving of a charge is a question of law." *Davis v. State*, 269 Ga. 276, 279 (3) (496 SE2d 699) (1998). We therefore review the issue de novo. See *Jordan v. State*, 322 Ga. App. 252, 256 (4) (a) (744 SE2d 447) (2013).

6

(a) Zambetti contends the trial court should have charged the jury that an oral promise to answer for the debt or default of another must be in writing. Zambetti did not file a written request for such a charge but it came up in colloquy with the court. Zambetti had requested a charge on the concept of an "original undertaking agreement" because Cheeley Investments had averred that Zambetti's promise was "an original undertaking in which [he was] furthering his own interest rather than underwriting the debt of another."[5] Following the close of the evidence, the court refused to give the proposed charge on an original undertaking on the ground that it was not adjusted to the facts of the case.[6]

---

[5] Cheeley Investments may have anticipated a potential problem with the Statute of Frauds because an original undertaking supported by new consideration is "legal and enforceable whether in writing or parol." *Holcombe v. Parker*, 99 Ga. App. 616, 620 (109 SE2d 348) (1959).

[6] The proposed charge correctly stated that in order to have an "original undertaking agreement," "a new promisor must substitute himself as the primary party to perform." Thus, "the creditor must be looking primarily to the new promisor for complete payment, rather than looking primarily to the original debtor." See *Litland v. Smith*, 247 Ga. App. 277, 278 (2) (543 SE2d 468) (2000) ("In order for a promise to be considered an original undertaking, the new promisor, for valuable consideration, must substitute himself as the party who is to perform, and the original promisor must be released.") (citation omitted). But this charge did not fit the facts of the case in part because the evidence showed that at the time of trial in the Forsyth action, Cheeley Investments had fully paid all of the attorney fees from the Gwinnett action and because there was no evidence that Zambetti substituted himself as the party required to pay fees owing to Cheeley Investments' attorneys. Thus, there was no evidence of an original undertaking as defined in Zambetti's proposed charge. Zambetti has not appealed the trial court's refusal to give that charge.

7

Zambetti countered that without a charge on original undertaking, he should be able to argue the Statute of Frauds to the jury, that is, he should be able to argue that the agreement to pay attorney fees was in fact a guarantee by Zambetti to pay Cheeley Investments' attorney fees, and that such a promise must be in writing under the Statute of Frauds as a promise to pay the debt of another. See OCGA § 13-5-30 (2) ("A promise to answer for the debt, default, or miscarriage of another" must be in writing). Cheeley Investments noted that Zambetti did not include this defense in the consolidated pretrial order. And the court disagreed with Zambetti's contention that he had implicitly raised the defense in the pretrial order and ruled: "If you have not raised it in your pretrial, you would be precluded." We find no reversible error.

"It is the duty of the court, whether requested or not, to give the jury appropriate instructions on every substantial and vital issue presented by the evidence, and on every theory of the case." *Robinson v. State*, 278 Ga. 836, 838 (5) n. 7 (607 SE2d 559) (2005), quoting Davis & Shulman, Georgia Practice & Procedure, § 21-3. Nevertheless, "[a] party in a civil case generally must present written requests for jury instructions and complain of the giving or failure to give an instruction before the jury returns its verdict in order to preserve the issue for appeal. OCGA § 5-5-24 (a), (b)." *Pearson v. Tippmann Pneumatics*, 281 Ga. 740, 742 (1)

8

(642 SE2d 691) (2007). Here, while he made an oral, non-specific request, Zambetti did not offer a written charge on the Statute of Frauds adjusted to the facts of the case such that the court did not err in refusing the charge. See *Kersey v. Williamson*, 284 Ga. 660, 663 (4) (670 SE2d 405) (2008) ("It was not error to refuse the oral request to charge.") (citation omitted); *Jones, Martin, Parris & Tessener Law Offices v. Westrex Corp.*, 310 Ga. App. 192, 198 (3) (b) (712 SE2d 603) (2011) ("Without knowing the precise charge requested, we cannot review the trial court's denial of that request."); *Colbert v. State*, 263 Ga. App. 193, 194 (2) (587 SE2d 300) (2003) ("Absent a written request, it is not error for the trial court to fail to give an instruction.") (footnote omitted).

Second, Zambetti did not include the defense of Statute of Frauds in the pretrial order and did not move to modify the pretrial order. "The Civil Practice Act provides that once entered, the pretrial order 'controls the subsequent course of the action unless modified at the trial to prevent manifest injustice.'" *Ga. Dept. of Human Resources v. Phillips*, 268 Ga. 316, 318 (1) (486 SE2d 851) (1997), quoting OCGA § 9-11-16 (b)). "If a claim or issue is omitted from the order, it is waived." *Long v. Marion*, 257 Ga. 431, 433-434 (2) (360 SE2d 255) (1987) (citation and punctuation omitted). And we agree with the trial court that Zambetti did not raise the defense of

the Statute of Frauds simply by stating that he intended to rely on "[a]ll applicable statutes governing contracts in the State of Georgia" and [a]ll applicable legal principles and rules of contract law, quasi-contracts, and equitable remedies and relief."

Third, although OCGA § 9-11-15 (b) provides that at trial the pleadings are deemed automatically amended to conform to the evidence, Zambetti has cited no evidence presented at trial that required a charge on the Statute of Frauds. Arguments of counsel are not evidence and are insufficient to modify a pretrial order automatically. See *Phillips*, 268 Ga. at 319 (1) ("comments made [to the jury] during voir dire, opening statements, and closing arguments . . . standing alone and unobjected to, cannot render a pretrial order automatically modified"). Further, Zambetti has not pointed to any evidence to show that the promise to pay the attorney fees was a promise to answer for the debt of another; that is, there is no evidence that Zambetti promised to underwrite or guarantee Cheeley Investments' debt to those attorneys. See OCGA § 13-5-30 (2); *Bennett Oil Co. v. Harrell*, 143 Ga. App. 268, 268 (238 SE2d 267) (1977) ("a classic 'personal guarantee' case" that must be in writing is where one party promised *the original creditor* that he would pay the debt of the original debtor if that debtor failed to pay; thus, a writing was required where

10

the third party, although not primarily liable to the creditor on an original undertaking, orally promised to pay the debtor if the debtor failed to pay the creditor). Rather, Zambetti's promise to Cheeley Investments was one of indemnity,[7] and "[c]ontracts of indemnity generally fall outside the Statute of Frauds." *Progressive Elec. Svcs. v. Task Force Constr.*, 327 Ga. App. 608, 613 (1) (760 SE2d 621) (2014), citing *Copeland v. Beville*, 93 Ga. App. 442, 443(1), 92 SE2d 54 (1956).

Finally, we find no substantial error that was harmful as a matter of law. See *Brown v. Tucker*, 337 Ga. App. 704, 714 (4) (788 SE2d 810) (2016) ("Absent a written request to charge, we review the propriety of the trial court's instructions to determine whether the court made a substantial error that was harmful as a matter of law. OCGA § 5-5-24 (c).").

> A charge "harmful as a matter of law" is one that is blatantly apparent and prejudicial to the extent that it raises the question of whether the losing party has, to some extent at least, been deprived of a fair trial because of it, or a gross injustice is about to result or has resulted directly attributable to the alleged errors.

---

[7] "[I]n a contract of indemnity the indemnitor, for a consideration, promises to indemnify and save harmless the indemnitee against liability of the indemnitee to a third person, or against loss resulting from such liability." *Thomasson v. Pineco*, 173 Ga. App. 794, 794 (328 SE2d 410) (1985) (citations and punctuation omitted).

11

*Shilliday v. Dunaway*, 220 Ga. App. 406, 411 (8) (469 SE2d 485) (1996) (citations and punctuation omitted); *Smith v. Norfolk Southern R. Co.*, 337 Ga. App. 604, 612 (2) (788 SE2d 508) (2016). Here, the court charged the jury on the fundamentals of contract formation, which gave the jury a basis to evaluate the case. "If the charge as a whole substantially covered the issues to be decided by the jury, we will not disturb a verdict supported by the evidence simply because the charge could have been clearer or more precise." *Lee v. Swain*, 291 Ga. 799, 800 (2) (a) (733 SE2d 726) (2012) (citation omitted).

The case of *Hathaway v. Bishop*, 214 Ga. App. 870 (449 SE2d 318) (1994), upon which Zambetti relies, in which we reversed a trial court's decision not to give a charge on the Statute of Frauds, is distinguishable. In *Hathaway*, the original creditor testified that defendant Hathaway had orally guaranteed the lease payments owed by the tenant. Id. at 871-872 (2). In the present case there is no evidence that Zambetti guaranteed attorney fee payments owed by Cheeley Investments.

In sum, we can find no reversible error by the trial court in not charging the jury on the Statute of Frauds.

(b) Zambetti contends the trial court should have charged the jury that a corporation is a separate legal entity that insulates its representatives from personal

12

liability. He argues that the jury therefore erroneously was allowed to pierce the corporate veil and hold him personally liable rather than placing the obligation on JRD, the company he represented.

But again, Zambetti did not file a proposed charge on corporations being a separate legal entity and did not ask for one during the charge conference. Nor did he raise an objection once the court read the jury charges; he only reiterated his earlier objections, which did not include any objections about the lack of a charge on the corporate form. See OCGA § 5-5-24 (a) ("in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection"); cf. *American Material Svcs. v. Giddens*, 296 Ga. App. 643, 646 (2) (675 SE2d 540) (2009) (appellant waived theories of liability by failing to submit requests to charge on those theories). Accordingly, our review is limited to whether the trial court made a substantial error that was harmful as a matter of law. OCGA § 5-5-24 (c). We find no such error.

The court's charge to the jury on contract formation included the requirements of having parties with the capacity to contract who consent and agree to all terms of the contract. Also, Zambetti argued to the jury that if there was a promise, it came

from JRD, not Zambetti personally. There is nothing in the court's charge to the jury that would have prevented the jury from agreeing with Zambetti and finding no personal liability. "Any charge which is not necessarily harmful to the complaining party is not such substantial error as to require reversal of the case, in the absence of a proper [objection] to the charge." *Moon v. Kimberly*, 116 Ga. App. 74, 75 (2) (156 SE2d 414) (1967). Accordingly, we find no substantial error that was harmful as a matter of law.

(c) Zambetti contends that the trial court erred by failing to charge that promissory estoppel requires evidence of forbearance as consideration, reasonable reliance, and due diligence.

Zambetti filed a proposed charge on promissory estoppel, and the court gave essentially the same charge.[8] This charge included that promissory estoppel requires

_____

[8] The court charged on promissory estoppel, largely as requested by Zambetti, as follows:

> The plaintiffs have made a claim against Defendant Zambetti for promissory estoppel. Promissory estoppel is statutorily defined as a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. In order to hold a party liable for promissory estoppel, there must be evidence that the first party

14

proof that the "promisor should have reasonably expected its promise to induce action or forbearance on the part of the promisee." Zambetti does not challenge this charge on appeal. Zambetti filed a separate proposed charge on "forbearance as consideration."[9] But his proposed charge on forbearance is written in terms of proving consideration for a contract, not in terms of promissory estoppel.[10] Yet on appeal, Zambetti argues that the court should have charged on forbearance as consideration for purposes of promissory estoppel. Thus, he did not propose in the trial court the jury charge he raises on appeal. Finally, Zambetti did not file any proposed charges on reasonable reliance and due diligence as elements of promissory estoppel.

Thus, again, Zambetti has waived appellate review of a separate jury charge on forbearance, reasonable reliance, and due diligence as elements of promissory

made a promise; second, the party promisor should have reasonably expected its promise to induce action or forbearance on the part of the promisee; third, the promise did induce such action or forbearance by the promisee; and, fourth, and lastly, an injustice can only be avoided by the enforcement of the promise.

[9] Zambetti objected to the court's failure to charge his requested charge and preserved his objection following the court's charge to the jury.

[10] When he proposed the charge below, Zambetti explained, "This is not forbearance with respect to promissory estoppel. This is forbearance as consideration."

estoppel. Moreover, as shown above, Zambetti proposed a charge on promissory estoppel that the trial court used. He may not complain now about language that he requested below. Moreover, the court charged the full definition of promissory estoppel found in the Georgia Code.[11] Finally, the elements of forbearance, reasonable reliance, and diligence, in a general sense, are included in that language. That a promisee might reasonably rely on a promise and use diligence in so doing is a corollary to the idea that the promisor could reasonably expect the promisee to act or forbear. We therefore find no substantial error harmful as a matter of law in the trial court's charge on promissory estoppel. Accordingly, for all the reasons given above, we find no reversible error by the trial court in not charging the jury on forbearance as consideration for promissory estoppel, and reasonable reliance and due diligence, as separate elements of promissory estoppel.

2. Zambetti next contends that the trial court erred by denying his motion for directed verdict. He argues on appeal as he did in his motion for directed verdict that

---

[11] See OCGA § 13-3-44 (a) ("A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.").

16

there was no evidence that his promise was an "original undertaking" as defined above and no evidence of any consideration to support his oral promise.

"A directed verdict is authorized only when there is no conflict in the evidence on any material issue and the evidence introduced, with all reasonable deductions, demands a particular verdict." *H. J. Russell & Co. v. Jones*, 250 Ga. App. 28-29 (550 SE2d 450) (2001) (footnote omitted). We will affirm if there is any evidence to support the jury's verdict. *Park*, 307 Ga. App. at 845 (2).

(a) With regard to the concept of an original undertaking, as defined above, neither a claim for breach of contract nor for promissory estoppel requires a showing of an original undertaking; the concepts are unrelated. Although Cheeley Investments may have attempted to plead that they were operating under the "original undertaking" exception to the Statute of Frauds, Zambetti fails to acknowledge that the Statue of Frauds is an affirmative defense and that, therefore, even if he had properly raised the issue, Zambetti would have had the burden of proving that the alleged promise had to be in writing to be enforceable. See *Hosp. Auth. of Valdosta/Lowndes County v. Fender*, 342 Ga. App. 13, 18 (1) (a) (802 SE2d 346) (2017) (burden of proof for an affirmative defense falls on the defendants).

17

Accordingly, Zambetti's argument that the plaintiffs failed to prove an original undertaking provides no grounds for reversing the judgment below.

(b) With regard to consideration for purposes of the claim of breach of contract, this Court previously found that the evidence produced on summary judgment included some evidence of consideration for Zambetti's promise to pay the attorney fees and expenses in that Cheeley Investments continued to negotiate with JRD despite the Gwinnett lawsuit:

> The record [ ] contains evidence that Zambetti promised to pay the litigation expenses including attorney fees incurred by Cheeley Investments in responding to the action. . . . In addition, there is evidence that, on behalf of Cheeley Investments, Robert Cheeley accepted Zambetti's promise and that the promise accomplished Zambetti's purpose in making it, that is, Cheeley Investments continued to negotiate the land deal despite JRD's failure to close by the extended deadline. Thus, there is evidence from which a jury could find that Zambetti's oral promise to pay Cheeley's Investments' legal expenses was supported by consideration.

*Cheeley Investments*, 332 Ga. App. at 116-117 (1).

Zambetti counters that the actual evidence presented at trial, including as a result of his cross-examination of Cheeley and Breedlove, was substantially different and that it showed that there was no true evidence Cheeley Investments continued to

18

negotiate or forbore from taking any other action in exchange for Zambetti's promise. See *Ballentine Motors of Ga. v. Nimmons*, 93 Ga. App. 708, 709 (1) (92 SE2d 714) (1956) (if there is "no substantial difference in the evidence" at trial from that previously presented when this Court held that there was sufficient evidence to present a question for the jury, the former ruling becomes the law of the case). We disagree. Cheeley testified at trial that he relied on the promise by continuing to work with JRD to close the real estate transaction even though the lawsuit had been filed. Thus, the law of the case from the earlier appeal applies. See id. Accordingly, the trial court did not err by denying Zambetti's motion for a directed verdict on this ground.

(c) Zambetti also argues that there was no evidence of forbearance by Cheeley Investments sufficient to sustain the jury's verdict on promissory estoppel. But we need not address that issue. Georgia law allows plaintiffs to proceed on alternative theories of recovery, and given that we have affirmed the jury's verdict and the judgment on the theory of breach of contract, the question of the sufficiency of the evidence for the alternative claim of promissory estoppel is moot. *Campbell v. Ailion*, 338 Ga. App. 382, 388 (2) (790 SE2d 68) (2016).

*Judgment affirmed. McFadden, P. J., and Bethel, J., concur.*

19